Natu J. Patel, SBN 188618
**THE PATEL LAW FIRM, P.C.**
2532 Dupont Drive
Irvine, California 92612-1524
Phone:          949.955.1077
Facsimile:      949.955.1877
NPatel@thePatelLawFirm.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SAMMY'S PRODUCE, INC.,

               Plaintiff,

   v.

REY & REY PRODUCE, INC., and
MANUEL REYNOSO,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action, No.:  3:08-cv-00930-L-WMC

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

08cv0930

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................5

   PROCEDURAL DEFECTS RELATING TO NOTICE ...............................................5

   DISPUTE AS TO THE AMOUNT OF PLAINTIFF'S PACA CLAIM..........................5

   REY & REY IS STILL IN BUSINESS ..................................................................5

   PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW............................................5

RELEVANT FACTS ..........................................................................................6

   BACKGROUND ..............................................................................................6

   PLAINTIFF'S FIRST TWO *EX PARTE* MOTIONS FOR TRO WITHOUT NOTICE ..........6

   PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO WITH NOTICE ....................7

ARGUMENT ......................................................................................................8

I.    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST
     DEFENDANTS SHOULD BE DENIED BECAUSE THERE ARE PROCEDURAL
     DEFICIENCIES RELATED TO THE NOTICE PROVISIONS OF FRCP 65(B).......8

II.   THIS MOTION SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM FAILS
     TO MEET THE REQUISTE STANDARDS FOR A PRELIMINARY INJUNCTION
     UNDER THE NINETH CIRCUIT ...................................................................9

  A.   Preliminary Injunction Standard Under PACA..........................................9

  B.   Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits of its PACA
     Claim for $95,064 because this amount is in dispute .................................10

  C.   There Is No Danger of Irreparable Injury to the Plaintiff. ....................10

    1.   Defendant's Financial Difficulties Do Not Give Rise To A Reasonable Fear On
      Plaintiff's Part That Defendant's Produce-Related Assets Are Being Or Are In
      Danger Of Being Depleted. .......................................................................10

    2.   Plaintiff Has Failed To Show That There Is A Danger That Defendants Will
      Dissipate The PACA Trust Before The Plaintiff Is Paid Off................12

III.  THIS MOTION SHOULD ALSO BE DENIED BECAUSE THE BALANCE OF
     HARSHIPS WEIGHS HEAVILY IN FAVOR OF REY & REY .................12

08cv0930

**IV.   FINALLY, A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW** ...........................................13

**CONCLUSION** ........................................................................................................15

-3-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO THE IMPOSITION OF A PRELIMINARY INJUNCTION

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Driscoll Potatoes, Inc. v. N.A. Produce Co., Inc.*, 765 F.Supp. 174, 177 (D.N.J. 1991).......13, 14

*Horizon Marketing v. Kingdom International Limited,*

      244 F.Supp.2d 131, 140 (E.D.N.Y. 2003)..................................................................10, 11

*JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.,*

70 F.Supp.2d 1119, 1120 (9th Cir. 1999)………………………………………………..9, 11

*Tanimura & Antel, Inc. v. Packed Fresh Produce, Inc.,*

222 F.3d 132, 141 (3rd Cir. 2000)………………………………………………...12, 13

**Statutes**

7 U.S.C. §499e(c)……………………………………………………………………………….5

**Rules**

FRCP 65(b) ………………………………………………………………………….6, 7, 8

FRCP 4(h)(1)………………………………………………………………………...8, 9

08cv0930

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Sammy's Produce, Inc. ("Plaintiff") has filed this Motion for Preliminary Injunction (the "Motion") against Defendants Rey & Rey Produce, Inc. ("Rey & Rey") and Manuel Reynoso ("Reynoso") (collectively "Defendants") with respect to its claim to enforce payment from the statutory trust pursuant to Section 5(c) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §499e(c). Plaintiff improperly seeks to enjoin Rey & Rey from transferring any and all of its assets. For the following reasons, Plaintiff motion has no merit and should be denied in its entirety:

**Procedural Defects Relating to Notice** Defendants were not served with the Summons, Complaint and Ex Parte Application for TRO with Notice, Civil Cover Sheet, Memorandum of Points & Authorities and other supporting documents and declarations (the "*Ex-Parte Application & Complaint*") on June 3, 2008, as provided in the Proof of Service ("POS") because Plaintiff failed to serve Rey & Rey's agent for service of process as well as Reynoso, personally.

**Dispute as to the Amount of Plaintiff's PACA Claim** Despite Plaintiff's claim that there is no dispute as to the amount that is owed under PACA, Rey & Rey's records show otherwise.

**Rey & Rey Is Still in Business** Although Rey & Rey has experienced financial hardships, Rey & Rey is still is business and has no current plan to file for bankruptcy.

**Plaintiff Has an Adequate Remedy At Law** Plaintiff has a claim for money damages which it can recover in a federal suit and there is no showing that Rey & Rey has insufficient assets to satisfy its obligation.

Because Plaintiff will not suffer any irreparable harm and the balance of hardships weighs in favor of Rey & Rey, the Court should deny Plaintiff's Motion in its entirety.

**RELEVANT FACTS**

**Background**   Plaintiff is a wholeseller of perishable agricultural commodities. Rey & Rey is a produce dealer and Reynoso, the president of Rey & Rey, is personally authorized to receive service of process on behalf of Rey & Rey. (Declaration of Manuel Reynoso ("Reynoso Decl.") ¶ 3; Exhibit B)

According to Rey & Rey's Vendor Report, Plaintiff has sold and delivered to Rey & Rey various wholesale lots of produce in the net amount of $443,163.20. In return, Rey & Rey has made payments to Plaintiff in the amount of $357,840.00 for a balance of $85,323.20. Furthermore, from September 24, 2007 to January 04, 2008, Rey & Rey shipped goods to Plaintiff for a balance of $14,306.50, which offsets its obligation to Plaintiff. As of June 10, 2008, Rey & Rey's unpaid balance is only $71,016.70. (Reynoso Decl. ¶ 4; Exhibit C)

Rey & Rey is obligated to hold in trust all produce-related assets received from the sale of produce in order to pay $71,016.70.

Although Rey & Rey has experienced financial difficulties, Rey & Rey continues doing business and has no plan to file for bankruptcy. (Reynoso Decl. ¶ 1)

**Plaintiff's First Two *Ex Parte* Motions For TRO Without Notice**   On May 28, 2008, Plaintiff filed an Ex Parte Application for Temporary Restringing Order ("TRO") Without Notice. The Court denied this application without prejudice on the grounds that Plaintiff failed to provide an affidavit and certification as required by Federal Rules of Civil Procedure ("FRCP") 65(b). Furthermore, Plaintiff did not provide any statement or discussion that would support the issuance of a TRO without notice. The Court directed Plaintiff to re-file the *Ex-Parte* Application & Complaint with an affidavit attesting to the notice and means of notice that has been provided to Defendants.

Later that day, Plaintiff refiled the Ex Parte Application for TRO Without Notice with a declaration by Plaintiff's counsel, Bryan W. Pease ("Pease"). In his declaration, Pease briefly argued that because an order granting the TRO was issued in a similar case, the TRO should be

08cv0930

issued in this case.  The court noted that that Pease's declaration lacked any discussion concerning the necessary elements for a TRO without notice under FRCP 65(b).  The Court **_again_** denied the Plaintiff's *Ex-Parte* Application & Complaint because Pease's declaration in support of the *Ex-Parte* Application & Complaint was not trustworthy and formed a critical basis for a TRO without notice.

        **Plaintiff's _Ex Parte_ Application For TRO With Notice**   Finally, on June 3, 2008, Plaintiff filed an *ex parte* Application For TRO With Notice.  Plaintiff also filed a Proof of Service ("POS") with this Honorable Court declaring that the *Ex-Parte* Application & Complaint were served upon Reynoso, personally and also on behalf Rey & Rey on June 3, 2008.  Based on that and relying on the POS, the Court issued an Order granting the Ex Parte application for TRO (the "Order").[1]

        The POS stated that Manuel Reynoso was served personally on his own behalf and on behalf of Rey & Rey.  The POS described Reynoso to be a 48 year old man, 5 feet 9 inches with black hair weighing 170 pounds, was served with the *Ex-Parte* Application & Complaint on Tuesday June 03, 2008 at 7:13AM.  (See Attachment #3 to the Motion).  **_Unfortunately, this is NOT true._**

        In fact, Reynoso is a 32 year-old, who is balding on the forehead, has brown hair and weighs 188 pounds.  He is also a 5 feet 11 inches tall.  (Reynoso Decl**.** ¶ 2; Exhibit A).  Reynoso does not look like a 48 year old man.  Reynoso was NEVER served on his behalf or on behalf Rey Rey on June 3, 2008.  Reynoso received the *Ex-Parte* Application & Complaint on Friday on or about June 6, 2008, which was left on his desk apparently by one of his employees.  Immediately thereafter, Rey & Rey retained The Patel Law Firm, P.C. (the "Firm") on Tuesday June 10, 2008 to represent Rey & Rey and Reynoso in this matter.  (Reynoso Decl**.** ¶ 7)

---

[1]  The Order noted that Defendants were served personally on June 2, 2008 with the *Ex-Parte* Application & Complaint.  The proof of Services states that defendants were in fact served on June 3, 2008 so the June 2, 2008 date appears to be an inadvertent error in the Order.

08cv0930

Since the Firm represents Rey & Rey in other matters, had Reynoso received the *Ex-Parte* Application & Complaint on June 3, 2008, Defendants would have appeared before this Honorable Court and would have opposed the *Ex-Parte* Application & Complaint to dispute the amount of the debt and the issuance of the TRO.

## ARGUMENT

**I.    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANT SHOULD BE DENIED BECAUSE THERE ARE PROCEDURAL DEFICIENCIES RELATED TO THE NOTICE PROVISIONS OF FRCP 65(b)**

The Court may grant a temporary restraining order without written or oral notice to the adverse party:

> only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney's certifies to the court in writing the efforts, if any, which have been made to hive the notice and the reasons supporting the claim that notice should not be required.

FRCP 65(b). Furthermore, FRCP 4(h) (1) provides that "service upon a domestic or foreign corporation … shall be effected: (1) … by delivering a copy of the summons and of the complaint to an officer, a managing or general agent or to any other agent authorized by statute to receive services of process."

The Court ***previously denied two*** of Plaintiff's *ex parte* applications for a TRO without notice on the grounds that Plaintiff failed to satisfy FRCP 65(b). Since Plaintiff failed to show that the necessary elements for a TRO without notice were met, Plaintiffs had no other choice but to file an *ex-parte* application for TRO **with notice** and provide a POS that a person authorized to receive service of process for Rey & Rey, and Reynoso himself in his individual capacity, were in fact served.

08cv0930

Contrary to the POS filed by Plaintiff, Rey & Rey and Reynoso were not served on June 3, 2008. The POS, signed under oath by Ignacio Gutierrez ("Gutierrez"), provides that the person served was Reynoso, a 48 year-old man with black hair and weighing 170 pounds. But the man served on June 3, 2008 could not have been Reynoso because Reynoso is 32 year-old balding man with brown hair, who weighs 188 pounds. Reynoso also declares under oath that he was never served with the *Ex-Parte* Application & Complaint. Accordingly, proper service has not been effectuated against Reynoso and Rey & Rey under under FRCP 4(h)(1). Therefore, the same procedural deficiencies exist with this Motion that the Court was attempting to avoid by denying Plaintiff's first two *ex parte* applications for a TRO without notice.

In fact, neither Rey & Rey nor Reynoso were put on notice of this action until Friday June 6, 2008 and were unable to retain the Firm until Tuesday June 10, 2008. Had Defendants been served with the *Ex-Parte* Application & Complaint on Tuesday June 3, 2008, Defendants would have had enough time to retain the Firm and file appropriate documents to oppose the ex-parte application.

Since Defendants did not receive the *Ex-Parte* Application & Complaint as mandated by this Court, the Order must be set aside on the grounds of inadequate service and defective notice.

## II.    THIS MOTION SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM FAILS TO MEET THE REQUISTE STANDARDS FOR A PRELIMINARY INJUNCTION UNDER THE NINETH CIRCUIT

### A. Preliminary Injunction Standard Under PACA

For a preliminary injunction to issue, the party requesting the injunction must demonstrate "either 1) a combination of probable success on the merits and the possibility of irreparable injury, or 2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.*, 70 F.Supp.2d 1119, 1120 (9th Cir. 1999). "These are not two tests, but rather the opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Id*. Irreparable harm is a risk that the buyer will

08cv0930

have dissipated the PACA trust before the seller is paid and leave the seller out of money and luck. *Horizon Marketing v. Kingdom International Limited*, 244 F.Supp.2d 131, 140 (E.D.N.Y. 2003).

The facts of this case show that Plaintiff is not entitled to a preliminary injunction.

### B. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits of its PACA Claim for $95,064 Because This Amount Is In Dispute

In *Horizon*, the court held that Plaintiffs established likelihood of success on the merits of their claim for payment under PACA, inasmuch as the sellers and buyers had PACA licenses, the sellers submitted unpaid invoices bearing statutory notice language required to preserve their entitlement to PACA trust proceeds and that Plaintiffs were entitled to payment was not in dispute. 244 F.Supp.2d at 140.

There is no dispute that Plaintiff and Defendants are subject to PACA, that Plaintiff sold Defendants, in interstate commerce, wholesale quantities of produce and that Plaintiff properly preserved its status as a trust creditor of Defendants under PACA by sending invoices for the produce to the Defendant. The dispute arises as to Plaintiff's allegation that the aggregate amount of $95,064.00 is past due and remains unpaid. Although Rey & Rey has an unpaid balance for the produce delivered by Plaintiff, Rey & Rey's vendor reports show that the balance is $71,016.70. (Reynoso Decl. ¶¶ 4,5; Exhibit C) If Defendants had been properly served on June 3, 2008, as provided in the POS, Rey & Rey would have had the opportunity to produce evidence that the unpaid balance is only $71,016.70 and that Plaintiff is not entitled to payment in the amount of $95,064.00.

Here, the $24,047.30 difference in the disputed amount is not insignificant and is a substantive consideration to be taken into account in deciding Plaintiff's PACA claim.

### C. There Is No Danger of Irreparable Injury to the Plaintiff.

#### 1. Defendant's Financial Difficulties Do Not Give Rise To A Reasonable Fear On Plaintiff's Part That Defendant's Produce-Related Assets Are Being Or Are In Danger Of Being Depleted.

In *JC Produce*, the court held that since defendant and its parent company was accruing significant operating losses in the amount of $1.6 million in a twelve week period; these financial difficulties gave rise to a reasonable fear on plaintiff's part that defendant's produce-related assets were being or were in danger of being depleted. 70 F.Supp.2d at 1123. Nevertheless, the court ordered defendant to post a bond sufficient to protect JC Produce's interest, rather than issuing an injunction, in order to minimize the hardship on the defendant. Furthermore, in *Horizon*, the court granted the preliminary injunction and held that the plaintiffs demonstrated that risk of irreparable harm was present because the seller was no longer in business and was in the process of liquidating its assets, consisting of $80,000 in receivables to be shared between plaintiff and six other creditors. 244 F.Supp.2d at 140.

Unlike the defendant in *Horizon*, Rey & Rey is still in business and has no intention of filing for bankruptcy. (Reynoso Decl. ¶ 1) Furthermore, Rey & Rey's operating losses are nowhere near as significant as the defendant's in JC Produce. In the general allegations of its complaint, Plaintiff limits the extent of their business relations with the Defendants to the period of October 12, 2007 to November 3, 2007. While this is the period during which issues with the trust arose, Plaintiff fails to mention that it has been in business with the Defendants since as far back as June 16, 2007 and that Plaintiff has delivered to the Defendants wholesale amounts of produce worth $443,163.20 against which, Defendants have paid $357,840.00 and have shipped goods to Plaintiff in the amount of $14,306.50. (Reynoso Decl. ¶ 4; Exhibit C) In the Plaintiff's President's declaration filed in support of Motion, there is no mention of the debt owed by the Plaintiff in the amount of $14,306.50 or offset of the Plaintiff's debt against the amount owed by Defendants.

Therefore, not only is the debt owed by Defendants substantially less than that claimed by Plaintiff, but Plaintiff has also failed to establish that Defendants' financial difficulties are significant enough to give rise to a fear that Plaintiff's trust assets were being or are in danger of being depleted.

08cv0930

### 2. Plaintiff Has Failed To Show That There Is A Danger That Defendants Will Dissipate The PACA Trust Before The Plaintiff Is Paid Off.

Trust dissipation constitutes irreparable harm if ultimate recovery is rendered unlikely. *Tanimura & Antel, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 141 (3rd Cir. 2000). In other words, plaintiff is harmed if it is unlikely that defendant will be able to satisfy its financial obligation to plaintiff. *Id.* Nevertheless, in its *Ex Parte* Application for TRO, Plaintiff merely states that if a preliminary injunction is not granted, there will be no assets in the trust and that Plaintiff will be forever excluded as a beneficiary of the trust. Furthermore, Plaintiff's claim that Defendants are dissipating the trust assets in that they have failed and refused to pay plaintiff for the produce supplied by Plaintiff. ***A showing of irreparable harm requires more than a mere delay in payment.*** There must be evidence that Defendants are in such financial difficulties that it is likely that Defendant will be unable to satisfy their obligation to Plaintiffs. There are no such facts in this case. In fact, in the course of its business relationship with Plaintiff, Rey & Rey has made net purchases in the amount of $443,163.00 and only $71,016.70 remains unpaid. The fact that Rey & Rey has paid off most of this amount shows that Rey & Rey is capable of satisfying its debt. Furthermore, as explained earlier, Rey & Rey is still in business and has no plan of filing for bankruptcy. (Reynoso Decl. ¶ 1) Plaintiff is taking a negative turn in the market out of proportion and thus, its request for a preliminary injunction is premature.

Therefore, since Rey & Rey's financial difficulties are not so burdensome and there is no realistic danger that its financial obligation to Plaintiff will not be satisfied, Plaintiff's claim that there is a substantial risk that they will suffer irreparable injury is weak, at its best.

### III. THIS MOTION SHOULD ALSO BE DENIED BECAUSE THE BALANCE OF HARSHIPS WEIGHS HEAVILY IN FAVOR OF REY & REY

Plaintiff claims that Defendants would not be harmed if a preliminary injunction is granted because Defendants would only be required to fulfill the duties imposed by statute.

In *Tanimura*, the court found that since the defendants were already financially insolvent and yet owed plaintiffs close to $1.5 million dollars, no greater harm from the granting of the preliminary injunction resulted to defendants than the plaintiffs. 222 F.3d at 140.

Despite the alleged financial difficulties, Rey & Rey is not financially insolvent and continues to operate its business and produce income. In addition, there is no indication that Rey & Rey plans to file for bankruptcy; in fact an injunction would have the effect of hindering Rey & Rey from operating its business. Rey & Rey is likely to suffer much more significant hardships and may even be forced into bankruptcy if such a broad injunction is granted.

Furthermore, the amount that Plaintiff seeks to recover is small given that Plaintiff and Rey & Rey have done business in the amount of $443,163.00. The amount that Plaintiff seeks to recover is no where near the $1.5 million dollars that plaintiff was owed in *Tanimura*.

Therefore, the amount of the debt and Rey & Rey's financial position shifts the balance of hardships heavily against granting the injunction. Since the required showing of harm varies inversely with the required showing of meritoriousness and the fact that the possible harm to Rey & Rey from an injunction is significant, it is of less weight that Plaintiff has shown a likelihood of success on the merits.

## IV.    FINALLY, A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW

An injunction will not be granted when there is an adequate remedy at law. *Driscoll Potatoes, Inc. v. N.A. Produce Co., Inc.*, 765 F.Supp. 174, 177 (D.N.J. 1991). "In other words, there will be no irreparable injury if money damages will be sufficient to provide redress." *Id*.

In *Driscoll*, defendants failed to pay plaintiff for potatoes they contracted to buy. *Id*. at 176. After filing a complaint against defendants, seeking to enforce the trust provisions of PACA and recover the $11,068.50 owed, plaintiff filed a motion for a preliminary injunction directing defendants to place the price of the potatoes in trust because, it contended, defendants had been using the proceeds from the sale of the potatoes to pay other creditors and suppliers. *Id*.

Nevertheless, the court held that Plaintiff had an adequate remedy at law since PACA explicitly provided that a trust beneficiary can commence suit in federal court to enforce payment of amounts owing from a trust and plaintiff could recover all amounts owned by Defendants in a suit for money damages. *Id*. at 177.   The court explained that plaintiff had not shown its entitlement to a preliminary injunction because there was no substance to its allegation that defendants were dissipating trust assets. *Id.* at 180.  In addition, there was no indication that defendants were ***either in bankruptcy or had insufficient assets*** to satisfy its obligation to plaintiff. Therefore, plaintiff failed to show the irreparable injury required for an injunction. *Id*.

As in *Driscoll*, Plaintiff will not suffer an irreparable injury because there is neither a significant danger of dissipation of its trust assets nor a showing that Defendant's financial position is so grave that Plaintiff will not recover in a suit for money damages.   Although Defendants have suffered some financial hardship in the last year, Defendants are still in business and continue to operate the business successfully.  Furthermore, as in *Driscoll*, there is no indication that Defendants either have insufficient assets to satisfy its obligation or plan to file for bankruptcy.

Therefore, since Plaintiff's complaint against Defendants is for money damages owing from a trust, this amount can be recovered without an injunction freezing Defendants' assets.

///

///

///

08cv0930

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Honorable Court deny the Plaintiff's Motion for Preliminary Injunction against Defendants. Additionally, despite the Court's explicit order requiring service, Plaintiff failed to serve Defendants. Since Plaintiff has failed to meet the requisite standards for a Preliminary Injunction and since Plaintiff has an adequate remedy at law, the request for issuance of the order for Preliminary Injunction must be denied.

DATED: June 17, 2008

Respectfully Submitted,
**THE PATEL LAW FIRM, P.C.**

Natu J. Patel, Attorneys for Defendants
Rey & Rey Produce, Inc., and
Manuel Reynoso

08cv0930

**PROOF OF SERVICE**
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA
CASE NO. 08cv00930

I, the undersigned, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is:  2532 Dupont Drive, Irvine, California 92612.

On June 17, 2008, I served the following document(s):

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

**Bryan W. Pease, Esq.**
**Bryan W. Pease, Inc.**
**302 Washington St. #404**
**San Diego, CA 92103**

☐ **By Mail:** I am readily familiar with The Patel Law Firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Irvine, California.

☐ **By Personal Service:** I provided such document(s) by hand delivery.

☐ **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the above address(es).

☐ **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following facsimile number(s):

☒ **By Electronic Mail:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following electronic mail address(es): bryanpease@gmail.com

Executed on June 17, 2008, at Irvine, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

_____
Jeannine Choi

08cv0930

1  Natu J. Patel, SBN 188618
2  **THE PATEL LAW FIRM, P.C.**
   2532 Dupont Drive
3  Irvine, California 92612-1524
   Phone:        949.955.1077
4  Facsimile:    949.955.1877
   NPatel@thePatelLawFirm.com
5
   Attorney for Defendants
6

7

8                UNITED STATES DISTRICT COURT
9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10

11                                    )
                                      )  Civil Action, No.: 3:08-cv-00930-L-WMC
12  SAMMY'S PRODUCE, INC.,            )
                                      )
13            Plaintiff,              )  **DECLARATION OF MANUEL**
                                      )  **REYNOSO IN SUPPORT OF**
14       v.                           )  **DEFENDANTS' MEMORANDUM OF**
                                      )  **POINTS AND AUTHORITIES IN**
15                                    )  **OPPOSITION TO THE IMPOSITION OF**
                                      )  **A PRELIMINARY INJUNCTION**
16  REY & REY PRODUCE, INC., and      )
    MANUEL REYNOSO,                   )
17                                    )
                                      )
18            Defendants.             )
                                      )
19  _____   )

20       I, Manuel Reynoso, declare that I am a Defendant and President of Defendant Rey &

21  Rey Produce, Inc. in the above action.  I am making this declaration in opposition to Petitioner's

22  Motion for a Preliminary Injunction.  As such, I have personal knowledge of the following facts

23  and if called upon, I could and would competently testify thereto:

24       1.  I am the President of Rey & Rey Produce, Inc. ("Rey & Rey"), which has been in

25  business since October 2002.  Rey & Rey has no current plans of filing for bankruptcy.

26

27
                                                                    08cv0930
28

2.  I am 32 years old and weigh 188 pounds.  My height is 5 feet and 11 inches.  Attached hereto as **Exhibit A** is a copy of my current photograph that was taken on June 16, 2008.

3.  Attached hereto as **Exhibit B** is the corporate profile of Rey & Rey from the California Secretary of State website, current as of June 16, 2008.  The profile shows that I am an authorized Agent for Service of Process for Rey & Rey.

4.  Attached hereto as **Exhibit C** is Rey & Rey's Vendor Report for Sammy's Produce, Inc., which shows the purchases in the amount of $443,163.20.  Rey & Rey has made total payments in the amount of $357,840.00 and has shipped produce to the Plaintiff in an amount of $14,306.50.

5.  The net balance owed by Rey & Rey as of June 10, 1008 is $71,016.70.

6.  I received the Summons, Complaint, Ex Parte Application for TRO with Notice and other related documents and declarations ("*Ex-Parte* Application & Complaint") on or about Friday June 6, 2008, which was left on my desk by one of my employees.

7.  I retained The Patel Law Firm, P.C. on Tuesday, June 10, 2008 to represent me in the above matter.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 16th day of June 2008 at Irvine, California.


DATED: June 16, 2008                                 Respectfully Submitted,


                                                     Manuel Reynoso, individually and
                                                     on behalf of Rey & Rey Produce, Inc.

08cv0930

**PROOF OF SERVICE**
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA
CASE NO. 08cv00930

I, the undersigned, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is:  2532 Dupont Drive, Irvine, California 92612.

On June 17, 2008, I served the following document(s):

**DECLARATION OF MANUEL REYNOSO IN SUPPORT OF DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

**Bryan W. Pease, Esq.**
**Bryan W. Pease, Inc.**
**302 Washington St. #404**
**San Diego, CA 92103**

☐ **By Mail:** I am readily familiar with The Patel Law Firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Irvine, California.

☐ **By Personal Service:** I provided such document(s) by hand delivery.

☐ **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the above address(es).

☐ **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following facsimile number(s):

☒ **By Electronic Mail:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following electronic mail address(es): bryanpease@gmail.com

Executed on June 17, 2008, at Irvine, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

_____
Jeannine Choi

08cv0930

# **<u>EXHIBIT A</u>**



# EXHIBIT B

# California Business Portal

**Secretary of State DEBRA BOWEN**

| SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | CA BUSINESS PORTAL | ARCHIVES & MUSEUM | OTHER SERVICES |

**Business Search Corporations**

- **Printer Friendly Page**
- **New Search**
- **Search Tips**
- **Field Definitions**
- **Status Definitions**
- **Name Availability**
- **Corporate Records**
- **Business Entities Records Order Form**
  - **Certificates**
  - **Copies**
  - **Status Reports**
- **FAQS**
- **Corporations Main Page**
- **Site Search**

## Corporations

The information displayed here is current as of "JUN 13, 2008" and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | | |
|---|---|---|---|
| REY & REY PRODUCE, INC. | | | |
| Number: C2448934 | Date Filed: 10/7/2002 | | Status: active |
| Jurisdiction: California | | | |
| Address | | | |
| PO BOX 21304 | | | |
| LOS ANGELES, CA 90021 | | | |
| Agent for Service of Process | | | |
| MANUEL REYNOSO | | | |
| 800 MCGARRY ST DOORS 11-12 | | | |
| LOS ANGELES, CA 90021 | | | |

**Printer Friendly**

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

# **EXHIBIT C**

2:50 PM
06/10/08

# Rey & Rey Produce, Inc.
# Vendor QuickReport
## January 2007 through June 2008

| Type | Date | Num | Account | Clr | Split | Amount |
|------|------|-----|---------|-----|-------|--------|
| **Sammy's Produce, Inc.** | | | | | | |
| Bill | 06/16/2007 | 1660 | Accounts Payable | | Inventory Asset | -9,600.00 |
| Bill | 06/28/2007 | 1925 | Accounts Payable | | Inventory Asset | -13,200.00 |
| Bill | 06/29/2007 | 1924 | Accounts Payable | | Inventory Asset | -13,200.00 |
| Bill | 06/30/2007 | 1985 | Accounts Payable | | Inventory Asset | -12,800.00 |
| Bill | 07/12/2007 | 2155 | Accounts Payable | | Inventory Asset | -25,660.00 |
| Bill | 07/17/2007 | 2245 | Accounts Payable | | -SPLIT- | -22,000.00 |
| Bill | 07/19/2007 | 2212 | Accounts Payable | | Inventory Asset | -10,400.00 |
| Bill | 08/17/2007 | 2703 | Accounts Payable | | Inventory Asset | -20,400.00 |
| Bill | 08/22/2007 | 2837 | Accounts Payable | | -SPLIT- | -14,960.00 |
| Bill | 09/14/2007 | 3257 | Accounts Payable | | Inventory Asset | -12,800.00 |
| Bill | 09/14/2007 | 3255 | Accounts Payable | | Inventory Asset | -12,800.00 |
| Bill | 09/14/2007 | 3258 | Accounts Payable | | Inventory Asset | -9,680.00 |
| Bill | 09/19/2007 | 3256 | Accounts Payable | | Inventory Asset | -10,120.00 |
| Bill | 09/20/2007 | 3313 | Accounts Payable | | -SPLIT- | -10,120.00 |
| Bill | 09/21/2007 | 3252 | Accounts Payable | | Inventory Asset | -15,760.00 |
| Bill | 09/26/2007 | 3278 | Accounts Payable | | -SPLIT- | -10,240.00 |
| Bill | 09/26/2007 | 3279 | Accounts Payable | | -SPLIT- | -10,560.00 |
| Bill | 09/28/2007 | 3383 | Accounts Payable | | -SPLIT- | -12,160.00 |
| Bill | 09/28/2007 | 3431 | Accounts Payable | | -SPLIT- | -11,000.00 |
| Bill | 09/28/2007 | 3477 | Accounts Payable | | -SPLIT- | -13,200.00 |
| Bill | 09/28/2007 | 3393 | Accounts Payable | | Inventory Asset | -11,520.00 |
| Bill | 09/29/2007 | 3318 | Accounts Payable | | -SPLIT- | -11,248.00 |
| Bill | 10/09/2007 | 3571 | Accounts Payable | | Inventory Asset | -5,698.00 |
| Bill | 10/10/2007 | 3575 | Accounts Payable | | Inventory Asset | -5,698.00 |
| Bill | 10/10/2007 | 3574 | Accounts Payable | | Inventory Asset | -19,200.00 |
| Bill | 10/11/2007 | 3590 | Accounts Payable | | -SPLIT- | -20,445.20 |
| Bill | 10/13/2007 | 3653 | Accounts Payable | | Inventory Asset | -5,698.00 |
| Bill | 10/13/2007 | 3654 | Accounts Payable | | Inventory Asset | -8,800.00 |
| Bill | 10/17/2007 | 3678 | Accounts Payable | | Inventory Asset | -5,698.00 |
| Bill | 10/19/2007 | 3718 | Accounts Payable | | -SPLIT- | -10,498.00 |
| Bill | 10/27/2007 | 3822 | Accounts Payable | | -SPLIT- | -12,320.00 |
| Bill | 10/30/2007 | 3845 | Accounts Payable | | Inventory Asset | -11,880.00 |
| Bill | 10/31/2007 | 3848 | Accounts Payable | | Inventory Asset | -11,880.00 |
| Bill | 10/31/2007 | 3853 | Accounts Payable | | Inventory Asset | -5,940.00 |
| Bill | 11/01/2007 | 3921 | Accounts Payable | | Inventory Asset | -23,920.00 |
| Bill | 11/03/2007 | 3967 | Accounts Payable | | Inventory Asset | -14,080.00 |
| Credit | 11/03/2007 | 5119 | Accounts Payable | | Inventory Asset | 11,960.00 |

*Net Purchases* # **-443,163.20**

**Total Payments** 357,840.00

**Total A/P** # -85,323.20

**Total A/R** 14,306.50

**Balance at 06/10/2008** # -71,016.7

Page 1 of 1

# Rey & Rey Produce, Inc.
## Vendor QuickReport
### January 1, 2007 through August 30, 2008

| Type | Date | Num | Account | Clr | Split | Amount |
|------|------|-----|---------|-----|-------|--------|
| **Sammy's Produce, Inc.** | | | | | | |
| Bill Pmt -Check | 08/22/2007 | 16818 | Banco Popular | √ | Accounts Payable | -9,600.00 |
| Check | 09/20/2007 | 17120 | Banco Popular | √ | Accounts Payable | -13,200.00 |
| Bill Pmt -Check | 09/25/2007 | 17121 | Banco Popular | √ | Accounts Payable | -13,200.00 |
| Bill Pmt -Check | 09/27/2007 | 17122 | Banco Popular | √ | Accounts Payable | -12,800.00 |
| Bill Pmt -Check | 10/12/2007 | 17313 | Banco Popular | √ | Accounts Payable | -25,600.00 |
| Bill Pmt -Check | 10/17/2007 | 17314 | Banco Popular | √ | Accounts Payable | -22,000.00 |
| Bill Pmt -Check | 10/30/2007 | 17420 | Banco Popular | √ | Accounts Payable | -14,960.00 |
| Check | 11/21/2007 | 17790 | Accounts Payable | √ | Accounts Payable | -20,400.00 |
| Bill Pmt -Check | 12/07/2007 | 17718 | Banco Popular | √ | Accounts Payable | -12,800.00 |
| Bill Pmt -Check | 12/13/2007 | 18049 | Banco Popular | √ | Accounts Payable | -10,400.00 |
| Bill Pmt -Check | 12/18/2007 | 17719 | Banco Popular | √ | Accounts Payable | -9,680.00 |
| Check | 12/25/2007 | 18050 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Deposit | 01/02/2008 | | Money Orden | √ | Accounts Payable | -23,200.00 |
| Check | 01/01/2008 | 18051 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 01/08/2008 | 18052 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 01/15/2008 | 18053 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 01/22/2008 | 18054 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 01/29/2008 | 18055 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 02/05/2008 | 18056 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 02/12/2008 | 18057 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 02/19/2008 | 18059 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 02/19/2008 | 18058 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 02/26/2008 | 18060 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 03/04/2008 | 18061 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 03/11/2008 | 18062 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 03/18/2008 | 18063 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 03/26/2008 | 1287 | Union Bank of California | √ | Accounts Payable | -10,000.00 |
| Check | 04/08/2008 | 18066 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| Check | 04/15/2008 | 18067 | Banco Popular | √ | Accounts Payable | -10,000.00 |
| | | | | | | **-357,840.00** |

**Rey & Rey Produce, Inc.**

# Customer Open Balance
### All Transactions

| | Type | Date | Num | Due Date | Open Balance |
|---|---|---|---|---|---|
| **Sammy's Produce.** | | | | | |
| | Invoice | 09/24/2007 | 139013 | 09/24/2007 | 4,350.00 |
| | Invoice | 09/27/2007 | 139112 | 09/27/2007 | 504.00 |
| | Invoice | 10/01/2007 | 139234 | 10/01/2007 | 2,334.00 |
| | Invoice | 10/10/2007 | 139462 | 10/10/2007 | 1,591.50 |
| | Invoice | 10/19/2007 | 86662 | 10/19/2007 | 1,995.00 |
| | Invoice | 12/07/2007 | 86672 | 12/07/2007 | 32.00 |
| | Invoice | 01/04/2008 | 141839 | 02/01/2008 | 3,500.00 |
| **Total Sammy's Produce.** | | | | | 14,306.50 |
| | | | | | |
| **TOTAL** | | | | | 14,306.50 |

Natu J. Patel, SBN 188618
**THE PATEL LAW FIRM, P.C.**
2532 Dupont Drive
Irvine, California 92612-1524
Phone:         949.955.1077
Facsimile:     949.955.1877
NPatel@thePatelLawFirm.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SAMMY'S PRODUCE, INC.,

              Plaintiff,

    v.

REY & REY PRODUCE, INC., and
MANUEL REYNOSO,

              Defendants.

Civil Action, No.:  3:08-cv-00930-L-WMC

**APPENDIX OF CASES FROM OTHER CIRCUITS IN SUPPORT OF DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

      Defendants Rey & Rey Produce, Inc. and Manuel Reynoso hereby respectfully submits its Appendix of Cases from Other Circuits in Support of its Memorandum of Points and Authorities in Opposition to the Imposition of a Preliminary Injunction:

1. *Driscoll Potatoes, Inc. v. N.A. Produce Co., Inc.*, 765 F.Supp. 174, 177 (D.N.J. 1991)

2. *Horizon Marketing v. Kingdom International Limited*, 244 F.Supp.2d 131, 140 (E.D.N.Y. 2003)

3. *Tanimura & Antel, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 141 (3rd Cir. 2000)

08cv0930

DATED: June 16, 2008

Respectfully Submitted,
**THE PATEL LAW FIRM, P.C.**


Natu J. Patel, Attorneys for Defendants
Rey & Rey Produce, Inc., and
Manuel Reynoso

08cv0930

APPENDIX OF CASES FROM OTHER CIRCUITS IN SUPPORT OF DEFENDANTS' MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION

**PROOF OF SERVICE**
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA
CASE NO. 08cv00930

I, the undersigned, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is:  2532 Dupont Drive, Irvine, California 92612.

On June 17, 2008, I served the following document(s):

**APPENDIX OF CASES FROM OTHER CIRCUITS IN SUPPORT OF DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

**Bryan W. Pease, Esq.**
**Bryan W. Pease, Inc.**
**302 Washington St. #404**
**San Diego, CA 92103**

☐ **By Mail:** I am readily familiar with The Patel Law Firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Irvine, California.

☐ **By Personal Service:** I provided such document(s) by hand delivery.

☐ **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the above address(es).

☐ **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following facsimile number(s):

☒ **By Electronic Mail:** I caused the above-referenced document(s) to be transmitted to the above-named persons at the following electronic mail address(es): bryanpease@gmail.com

Executed on June 17, 2008, at Irvine, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

_Jeannine Choi_
Jeannine Choi

08cv0930

# <u>EXHIBIT 1</u>

**174**                 **765 FEDERAL SUPPLEMENT**

part and denied in part. Five issues therefore remain for trial.

1. The Court will deny the parties' cross-motions for summary judgment on Anthes' claim that TSI violated § 1692g(a) by informing her that her 30 day period to contest her debt had expired, when in fact, it had not. In order to resolve this claim, the trier of fact will have to address two issues.

a. The trier of fact will first have to determine whether Anthes received the June 15 and July 13 TSI letters less than 30 days apart. If she did, a technical violation of the act will have occurred.

b. If the trier of fact finds that § 1692g(a) was violated, the trier of fact will then have to consider the appropriate amount of statutory damages. No actual damages are available for this technical violation of the statute.

2. With respect to the claim that TSI's practice of having Peter David Rubin, Esq. send collection letters violated § 1692e(10), both parties' motions for summary judgment will be denied. This raises three issues for trial.

a. The trier of fact will first have to determine whether the above practice constitutes a "deceptive means" to collect a debt in violation of § 1692e(10).

b. If TSI's practice is found to be "deceptive," the trier of fact will then have to determine the appropriate measure of actual damages. Those are damages Anthes suffered because she received a collection letter sent from an attorney, not damages caused by the content of the Rubin letter.

c. Additionally, if TSI's practice is found to be "deceptive," the trier of fact will have to determine the appropriate measure of statutory damages.

An appropriate Order will be entered.



**DRISCOLL POTATOES, INC., Plaintiff,**

v.

**N.A. PRODUCE CO., INC., and Nestor Balocos, a/k/a, Nestor Baloco, Defendants.**

**Civ. A. No. 91–1445.**

United States District Court,
D. New Jersey.

May 14, 1991.

Unpaid supplier brought action seeking an injunction directing deposit of its contract price in a separate interest-bearing bank account. The District Court, Lechner, J., held that: (1) the supplier had an adequate remedy at law under the Perishable Agricultural Commodities Act (PACA) and, thus, was not entitled to injunction; (2) PACA permits segregation of trust assets only when dissipation is shown and only when the Secretary of Agriculture seeks an injunction against dissipation; and (3) PACA does not authorize a court to order maintenance of a separate bank account.

Application for preliminary injunction denied.

**1. Injunction ⟜57**

Unpaid supplier of potatoes had adequate remedy at law under Perishable Agricultural Commodities Act (PACA) to enforce payment of amounts owing and, therefore, supplier was not entitled to preliminary injunction to direct placement of contract price in interest-bearing account. Perishable Agricultural Commodities Act, 1930, § 5(c), 7 U.S.C.A. § 499e(c).

**2. Factors ⟜59**

Segregation of Perishable Agricultural Commodities Act (PACA) trust assets is permitted only upon showing of dissipation of trust assets and only when Secretary of Agriculture seeks injunction against dissipation; Congress did not contemplate segregation of trust assets upon motion of unpaid supplier. Perishable Agricultural

Commodities Act, 1930, § 5(c), 7 U.S.C.A. § 499e(c).

### 3. Injunction ⏍57

Unpaid supplier failed to show that dealer, broker, or commission merchant was dissipating assets subject to Perishable Agricultural Commodities Act trust and, therefore, supplier was not entitled to injunction ordering segregation of assets, even if segregation could be appropriate; supplier failed to show irreparable injury required for injunctive relief. Perishable Agricultural Commodities Act, 1930, § 5(c), 7 U.S.C.A. § 499e(c).

### 4. Factors ⏍59

Perishable Agricultural Commodities Act (PACA) does not authorize or require creation of separate bank accounts containing assets held in trust for unpaid supplier. Perishable Agricultural Commodities Act, 1930, § 5(c), 7 U.S.C.A. § 499e(c).

---

Bruce A. Feldman, Karsch & Meyer, New York City, for plaintiff.

Brian D. Keenan, Anthony M. Costa, Newark, N.J., for defendants.

### OPINION

LECHNER, District Judge.

Currently before the court is the application of plaintiff Driscoll Potatoes, Inc. ("Driscoll") for a preliminary injunction

**1.** Driscoll has submitted the following for consideration:

Memorandum of Law in Support of Application for a Preliminary Injunction ("Brief"); Affidavit of Rosie Davis ("Davis Affidavit"). Driscoll has also submitted a proposed order ("Proposed Order") which indicates Driscoll desires a preliminary injunction directing Defendants to place the amount owed Driscoll in a separate, interest bearing account in a nationally chartered banking institution.

No opposition has been received. Driscoll, however, has submitted a letter, dated 9 May 1991, from counsel for Defendants to counsel for Driscoll indicating Defendants do not oppose the application for a preliminary injunction in part because "no reasonable grounds for such opposition exist." This, however, is not a case in which Defendants have consented to the preliminary injunction. Consequently, despite the lack of opposition, it must be considered whether, as a matter of law, Driscoll is entitled to the sort of preliminary injunction sought.

pursuant to Fed.R.Civ.P. 65.[1] Driscoll seeks a preliminary injunction directing defendants N.A. Produce, Inc. ("N.A. Produce") and Nestor Balocos, also known as Nestor Baloco, ("Balocos") (collectively, "Defendants"), to comply with the statutory trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.* Specifically, Driscoll seeks an order directing Defendants to place in an interest-bearing account at a particular nationally chartered banking institution the amount of $11,068.50. For the reasons set forth below, Driscoll's application is denied.

*Facts*

Because no opposition has been received, the facts as alleged by Driscoll are not disputed. Driscoll, located in Idaho, is a dealer, broker and/or commission merchant of fresh potatoes. Davis Affidavit at ¶ 2. N.A. Produce, located in New Jersey, is a dealer, broker and/or commission merchant licensed under PACA. *Id.* at ¶ 3. Balocos is an officer, director and shareholder of N.A. Produce. *Id.* at ¶ 4.

On 18 January 1991, Driscoll sold N.A. Produce a wholesale lot of potatoes, a perishable agricultural commodity, for the price of $11,068.50. *Id.* at ¶ 5. This transaction, involving interstate commerce, is apparently governed by certain provisions of PACA, namely 7 U.S.C. § 499e(c).[2]

**2.** Section 499e(c) provides, in pertinent part:

(1) It is hereby found that a burden on commerce in perishable agriculture commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased ... encumber or gives lenders a security interest in, such commodities ... and any such receivables or proceeds from the sale of such commodities ... and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions ... and any receivables or proceeds from the sale of such commodities ... shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the

Under PACA, a dealer, broker or commission merchant of perishable agricultural commodities must hold all proceeds from the sale of such commodities in trust for the unpaid suppliers of the commodities. 7 U.S.C. § 499e(c)(2). The unpaid supplier will be entitled to the benefit of the trust only if it provides written notice of its intent to preserve the benefits of the trust to the dealer, broker or commission merchant who sold the commodities. *Id.* at § 499e(c)(3). Furthermore, the notice of intent must be filed with the Secretary of Agriculture. *Id.* Assuming the notice of intent has been properly given and filed, PACA provides "[t]he several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary [of Agriculture] to prevent and restrain dissipation of the trust." *Id.* at § 499e(c)(4).

Driscoll has not been paid for the potatoes sold to N.A. Produce. Davis Affidavit at ¶ 9. Therefore, under PACA, Defendants are required to hold any proceeds from the sale of potatoes supplied by Driscoll in trust for Driscoll. On 27 February 1991, and pursuant to PACA, Driscoll filed a notice of intent to preserve its rights in the trust with the Secretary of Agriculture. Davis Affidavit at ¶ 7. On the same day, Driscoll sent a copy of its notice of intent to Defendants. *Id.*

On 11 April 1991, Driscoll filed a complaint against Defendants. By its complaint, Driscoll seeks to enforce the trust provisions of PACA and to recover the $11,068.50 owed to Driscoll for the potatoes sold to N.A. Produce. The summons and

complaint was served on 15 April 1991. No answer has yet been filed.

On 19 April 1991, Driscoll filed a motion for a preliminary injunction directing Defendants to place the price of the potatoes in trust, pursuant to PACA. Driscoll believes Defendants have been dissipating the assets of the trust. *Id.* at ¶ 10. Driscoll also contends Defendants have been using the proceeds from the sale of the potatoes to pay other creditors and suppliers of N.A. Produce. *Id.* at ¶¶ 8 & 10. As noted above, no opposition to this motion has been received.

*Discussion*

A.  Standard of Review

To prevail on its application for a preliminary injunction, the moving party must show:

> (1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the nonmoving party if relief were granted; (3) the likelihood of success on the merits; and (4) the public interest [in granting preliminary relief].

*Alessi v. Pennsylvania, Dept. of Pub. Welfare,* 893 F.2d 1444, 1447 (3d Cir.1990); *see Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989); *Fechter v. HMW Indus., Inc.,* 879 F.2d 1111, 1116 (3d Cir.1989); *CPC Int'l, Inc. v. Caribe Food Distrib.,* 731 F.Supp. 660, 664 (D.N.J.1990); *Bascom Food Prod. Corp. v. Reese Finer Foods, Inc.,* 715 F.Supp. 616, 624 (D.N.J.1989). Significantly, a "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988).

---

transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.....

(3) The unpaid supplier, seller, or agent shall lose the benefit of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary [of Agriculture] within thirty days (i) after expiration of the time prescribed by which payment

must be made, as set forth in regulations issued by the Secretary [of Agriculture], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored....

7 U.S.C. § 499e(c).

**DRISCOLL POTATOES, INC. v. N.A. PRODUCE CO., INC.**    **177**

Cite as 765 F.Supp. 174 (D.N.J. 1991)

### B. Driscoll's Application

[1]  As Driscoll points out, other courts have granted preliminary injunctions directing compliance with the trust provisions of PACA.[3]  Brief at 5–6.  A salient factor in several of these cases was that the trust assets were being dissipated by the defendants.  *See Korean Produce*, No. 87–6579; *Edward Boker*, No. 86–3903; *Chiquita Brands*, No. 89–1951.

Based upon the submissions, a preliminary injunction is not warranted in this case.  The Third Circuit has repeatedly stated an injunction will not be granted when there is an adequate remedy at law. *Instant Air Freight*, 882 F.2d at 801; *Frank's GMC*, 847 F.2d at 102.  In other words, there will be no irreparable injury if money damages will be sufficient to provide redress.  *Instant Air Freight*, 882 F.2d at 801; *Frank's GMC*, 847 F.2d at 102.

There is an adequate remedy at law in this case.  PACA explicitly provides a trust beneficiary can commence suit in federal court to enforce payment of amounts owing from a trust.  7 U.S.C. § 499e(c)(4).  Therefore, Driscoll can commence, and indeed has commenced, a suit to recover the price of the potatoes supplied to N.A. Produce.  The remedy at law is adequate because Driscoll may recover all amounts owed by Defendants in a suit for money damages.

### C. Dissipation and Segregation of PACA Trust Assets

[2]  Driscoll asserts that because Defendants are in the process of dissipating the assets of the trust, any remedy at law would be inadequate.  Davis Affidavit at ¶¶ 8 & 10.  Consequently, Driscoll seeks a preliminary injunction directing Defendants to segregate funds equivalent to the amount of its debt to Driscoll and place them in an interest bearing account at a particular depository institution.  *See* Proposed Order.  It does not appear, however, that dissipation justifies the sort of injunctive relief Driscoll seeks under PACA and section 499e.

Other courts have struggled with the issue of whether PACA permits a court to order the segregation of PACA trust assets and, if so, what circumstances justify segregation.  Some courts have held PACA does not permit the segregation of trust assets.  *See, e.g., JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 78 (2d Cir. 1990); *DeBruyn Produce Co. v. Victor Foods, Inc.*, 674 F.Supp. 1405, 1407–09 (E.D.Mo.1987); *C & E Enterprises, Inc. v. Milton Poulos, Inc.*, 107 B.R. 715, 718 (9th Cir.1989); *see also Fresh Western Marketing v. M & L Food Center, Inc.*, 707 F.Supp. 515, 516 (S.D.Fla.1989) (noting PACA does not appear to allow segregation and movant failed to show dissipation).[4]  In contrast, other courts have permitted segregation upon a showing of dissipation of trust assets or the financial insta-

---

3.  Driscoll relies upon several unreported cases which it attaches to its Brief.  Brief at 5–6 (citing *Six L's Packing Co. v. Arter*, No. 88–1998 (E.D.Pa. 16 Jan.1991) (1991 WL 4400, 1991 Lexis 407); *Finest Fruits, Inc. v. Korean Produce Corp.*, No. 87–6579 (S.D.N.Y. 2 Oct. 1987) (1987 WL 18454, 1987 Lexis 8948); *Finest Fruits, Inc. v. Edward Boker, Inc.*, No. 86–3903 (S.D.N.Y. 30 May 1986); *Chiquita Brands, Inc. v. Blair Merriam Fresh Fruit and Produce Co.*, No. 89–B–1951 (D.Colo. 14 Nov.1989) (1989 WL 251474); *Raymond L. Park, Inc. v. Continental Farms & Produce Co.*, No. 89–1364, 1989 WL 159580 (C.D. Cal. 8 Mar.1989); *Lyle W. Currie Co. v. So Good Potato Chip Co.*, No. 88–2320–C–5 (E.D.Mo. 2 Dec.1988); *Golden Triangle Packing Co. v. American Banana & Produce Co.*, No. 87–1166 (W.D.Pa. 2 June 1987); *Finest Fruits, Inc. v. Freshville Produce Distrib., Inc.*, No. 86–7621 (S.D.N.Y. 23 Oct.1986); *Goodie Brand Packing*

*Corp. v. B. Eisner Produce Corp.*, No. 86–8747 (S.D.N.Y. 1 Dec.1986)).  Driscoll notes the preliminary injunction in *Six L's* was affirmed by the Third Circuit without opinion.  Brief at 5.

4.  In *Fresh Western*, the court, relying upon a Second Circuit case, noted a showing of dissipation *might* justify a preliminary injunction.  707 F.Supp. at 516 (citing *Dole Fresh Fruit Co. v. United Banana Co*, 821 F.2d 106 (2d Cir.1987)).  The Second Circuit case, however, did not explicitly consider the issue; the Circuit merely addressed the propriety of contempt orders based upon a preliminary injunction which barred the dissipation of PACA trust assets.  *Dole Fresh Fruit*, 821 F.2d at 108–11.  In any event, the court in *Fresh Western* declined to grant an injunction because the plaintiff had merely alleged, but failed to show, dissipation.  707 F.Supp. at 516.

bility of the debtor. *See, e.g., Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990) (dissipation shown); *De-Bruyn Produce Co. v. Olympia Produce Co.,* 734 F.Supp. 483, 486 (N.D.Ga.1989) (debtor financially troubled); *J.R. Brooks & Son, Inc. v. Norman's Country Market, Inc.,* 98 B.R. 47, 50 (N.D.Fla.1989) (dissipation shown); *see also Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 108 (2d Cir.1987) (noting district court ordered segregation to prevent dissipation). An examination of the relevant cases and legislative history indicates segregation is appropriate only when dissipation is shown and only when the Secretary of Agriculture seeks an injunction of the dissipation.

The legislative history of PACA indicates Congress did not contemplate the segregation of trust assets upon the motion of an unpaid supplier. PACA was originally enacted to "encourage fair trading practices in the marketing of perishable commodities by ... providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 98–543, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 406. Congress noted, however, that "[u]nder present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract." H.R.Rep. at 3; 1984 U.S.Code Cong. & Admin.News at 407. Consequently, Congress amended PACA. In amending PACA, Congress stated:

> This legislation would provide a remedy by impressing a trust in favor of the unpaid seller or supplier on the inventories of commodities and products derived from and on the proceeds of sale of such commodities and products in the hands of the commission merchant, dealer or broker....

H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407.

Significantly, Congress stated the PACA trust would be "a nonsegregated 'floating trust' made up of all of a firm's commodity related liquid assets, under which there may be a commingling of trust assets. H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407. Under PACA, there is "no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process." H.R. Rep. at 5; 1984 U.S.Code Cong. & Admin. News at 409. The Department of Agriculture, in recommending the adoption of the PACA amendments, noted that "in the event of business failures, trust funds would be applied to produce accounts and not distributed to other creditors." [5] H.R. Rep. at 14; 1984 U.S.Code Cong. & Admin. News at 417.

The legislative history of PACA suggests segregation is an inappropriate remedy. *C & E Enterprises,* 107 B.R. at 717–18. Under the statutory scheme described above, the trust is, in a sense, a legal fiction. Congress specifically provided the trust is nonsegregated and floating. H.R.Rep. at 4; 1984 U.S.Code Cong. & Admin.News at 407; *see JSG Trading,* 917 F.2d at 78. In addition, Congress allowed for the commingling of trust assets. In other words, the trust is nothing more than that portion of the debtor's assets which may be traced to the disposition of perishable agricultural commodities. Nothing in the legislative history indicates Congress intended unpaid suppliers to have the ability to compel debtors to segregate trust assets. *See Victor Foods,* 674 F.Supp. at 1407.

Nonetheless, in *Frio Ice,* the Eleventh Circuit held PACA permitted the segregation of trust assets. 918 F.2d at 159. The Circuit noted the legislative history indicated PACA was designed to protect unpaid suppliers of commodities from the dissipation of trust assets. *Id.* ("[P]reventing dissipation of the trust is a key purpose of PACA."). Consequently, the Circuit held injunctive relief in the form of segregation of trust assets was proper. *Id.*

The Eleventh Circuit, however, ignored the specific provision in PACA relating to dissipation of trust assets. When Con-

---

**5.** The Circuit in *C & E Enterprises* pointed out it is well-settled that PACA trust assets are not part

of the bankruptcy estate of the debtor. 107 B.R. at 718.

gress specifically addressed the dissipation of trust assets, it did not provide that suppliers of commodities have a right to seek segregation of trust assets upon a showing of dissipation. Rather, Congress expressly vested the Secretary of Agriculture with the obligation to prevent dissipation of trust assets:

> If an investigation reveals the trust is being dissipated, each unpaid supplier-seller should be informed so that it will be able to protect it statutory trust rights. Except where violations are repeated or flagrant, the firm should be given a written warning and an opportunity to bring itself into compliance.... If a firm persists in trust dissipation, the Secretary [of Agriculture] can initiate an injunctive proceeding in the U.S. district court....

H.R.Rep. at 8; 1984 U.S.Code Cong. & Admin.News at 411; *see JSG Trading*, 917 F.2d at 78 (noting Secretary of Agriculture may seek to enjoin dissipation but not segregation); *Victor Foods*, 674 F.Supp. at 1409 (noting unpaid supplier may be entitled to injunction against dissipation, but injunction imposing segregation). In light of the legislative history, it appears the Eleventh Circuit misinterpreted the intent of Congress to vest the Secretary of Agriculture with power to prevent dissipation for the intent to vest unpaid suppliers with the right to seek segregation.[6]

Dissipation of trust assets is a legitimate concern under PACA. PACA, however, is accurately construed to restrict the unpaid supplier's ability to segregate trust assets. This construction is supported by both the legislative history and the language of section 499e, which provide the Secretary of Agriculture has the authority to seek an injunction of dissipation. 7 U.S.C. § 499e(c)(4)(ii); H.R.Rep. at 8; 1984 U.S. Code Cong. & Admin.News at 411. Moreover, PACA specifically provides unpaid sellers with their own remedy: they may bring an action to compel payment of trust

proceeds. 7 U.S.C. § 499e(c)(4)(i); *see Victor Foods*, 674 F.Supp. at 1409. Under these circumstances, it does not appear PACA allows for the relief Driscoll seeks in this motion.

### 1. *Proof Required for Segregation*

[3] All of the cases allowing segregation upon the motion of the unpaid seller involved clear showings of either dissipation of trusts or general financial instability of the debtors. *Frio Ice*, 918 F.2d at 159 (dissipation); *Olympia Produce*, 734 F.Supp. at 486 (debtor financially troubled); *J.R. Brooks*, 98 B.R. at 50 (dissipation); *Dole Fresh Fruit*, 821 F.2d at 108 (dissipation). It may be argued, however, that mere dissipation is insufficient to justify injunctive relief in the form of segregation.

In *JSG Trading*, the Second Circuit held an injunction could not issue under section 499e when there was no showing that the debtor's use of trust assets would so deplete the trust that the unpaid supplier would have an inadequate remedy at law. *Id.* at 80. The Circuit therefore reversed the grant of a preliminary injunction directing the debtor to segregate a portion of its assets equal to its debt to the unpaid supplier from its other assets and place the segregated assets in a separate PACA trust account. *JSG Trading*, 917 F.2d at 79–80.

The unpaid supplier in *JSG Trading* had made an allegation similar to the one Driscoll makes: the debtor was dissipating trust assets by using them to pay other creditors. *Id.* at 78. The Circuit rejected the argument that dissipation would require segregation of trust assets from other assets of the debtor on the ground the legislative history of PACA indicated it was intended, in part, to protect the suppliers of perishable commodities from the bankruptcies of their buyers. *JSG Trading*, 917 F.2d at 77. *Accord Victor Foods*, 674 F.Supp. at 1409. Because the debtor

---

6. The Circuit in *JSG Trading* noted that if plaintiff feared dissipation, they could ask the Secretary of Agriculture to commence a proceeding pursuant to 7 U.S.C. § 499e(c)(4)(ii) to enjoin any dissipation. 917 F.2d at 78. Given that

PACA specifically provided a mechanism to prevent dissipation, the Circuit declined to grant an injunction directing segregation of the defendant's assets. *Id.*

was financially healthy, the Circuit in *JSG Trading* declined to uphold the injunction. 917 F.2d at 80. The ruling in *JSG Trading* may be interpreted to mean PACA allows a debtor to dissipate trust assets or use them for purposes other than paying the unpaid supplier so long as the debtor retains sufficient other assets to satisfy its obligations to the creditor.[7] *See id.*

In any event, even if it is assumed segregation upon an unpaid supplier's motion is appropriate, Driscoll has not shown it is entitled to this relief. Driscoll has not substantiated its conclusory allegation that Defendants are dissipating trust assets. Moreover, there is no indication Defendants are either in bankruptcy or have insufficient assets to satisfy its obligation to Driscoll. Under these circumstances, Driscoll has not shown the irreparable injury required for an injunction to issue.

## D. Separate Bank Accounts Under PACA

**[4]** There is an additional reason to deny Driscoll the relief sought. It has been held that PACA does not authorize a court to direct a debtor to deposit any amounts held in trust under section 499e into a separate bank account. *Victor Foods*, 674 F.Supp. at 1409. *But see Six L's*, No. 88–1998. In *DeBruyn*, the supplier of an agricultural commodity sought preliminary relief in the form of an order directing the debtor to establish a separate bank account representing the amounts held in trust. The court first noted there was no need for the court to order segregation of the trust assets from other assets of the debtor because the statutory scheme of PACA essentially contemplates a continuously existing trust. *Id.* at 1407. In other words, the court interpreted the trust requirement to be nothing more than a bookkeeping procedure. *Id.* With this in mind, the court then examined the legislative history of PACA to determine if Congress intended PACA to require the maintenance of separate bank accounts for trust assets.

The court held that nothing in PACA's legislative history created a requirement for separate accounts. *Id.* at 1408–09. Indeed, the court analogized section 499e to Article 9 of the Uniform Commercial Code, governing security interests. *Id.* In essence, the court reasoned, PACA did not require separate bank accounts because the trust provision did nothing more than create what is tantamount to a security interest in certain assets of the debtor. *Id.* at 1409.

Driscoll has moved for an order directing Defendants to establish a separate bank account for trust assets. Under the reasoning in *DeBruyn*, however, PACA neither authorizes nor requires the creation of such an account. Consequently, it is questionable whether Driscoll would be entitled to this relief even if irreparable harm were shown. Accordingly, Driscoll's application is denied.

### Conclusion

For the reasons set forth above, Driscoll's application for a preliminary injunction is denied.



---

7. This conclusion is consistent with *Six L's*, the only case Driscoll cites which contains any discussion of the facts. *See* Brief, Exhibit A. Although *Six L's* value here is limited because the court did not articulate its reasoning in granting injunctive relief, the facts indicate injunctive relief would be appropriate under *JSG Trading*. In *Six L's*, the court indicated the defendant was in bankruptcy. Although the court was not aware of the pending bankruptcy when it first entered the order granting injunctive relief, it subsequently became aware of the bankruptcy proceeding and reinstated the order with that awareness. In any event, the pending bankruptcy suggests the defendant in *Six L's* might not have sufficient assets to satisfy its obligations to the unpaid supplier. Therefore, the grant of injunctive relief in *Six L's* would appear to comport with the proposition that injunctive relief under section 499e requires more than mere dissipation of assets.

Driscoll points out the Third Circuit affirmed the injunction in *Six L's*. Brief at 5 (citing *Six L's*). Although there is no reported opinion from the Circuit, it appears the issue faced by the Circuit in *Six L's* was whether trust assets were part of the bankruptcy estate. This suggests segregation is an appropriate way to remove trust assets from a bankruptcy estate. Therefore, the mere affirmance of the injunction in *Six L's* does not compel a finding that the injunctive relief Driscoll seeks is proper.

# EXHIBIT 2

HORIZON MARKETING v. KINGDOM INTERN. LTD.    **131**
Cite as 244 F.Supp.2d 131 (E.D.N.Y. 2003)

**HORIZON MARKETING, a d/b/a of Evans Sales, Inc., and Venida Marketing Co., Plaintiffs,**

**v.**

**KINGDOM INTERNATIONAL LIMIT-ED, Dong Ku Ra Mi Corp., Mei-Chuen Dai a/k/a John Chuen, individually, and Ko–Yu Mo a/k/a Gibson Mo, individually, Defendants.**

**No. 02–CV–6488(NGG).**

United States District Court,
E.D. New York.

Feb. 14, 2003.

Unpaid produce sellers sued corporate produce buyer, purported corporate buyer, and purported buyer's principals, seeking payment of amounts allegedly due. Sellers moved for preliminary injunction to prevent dissipation of assets that were part of trust formed pursuant to Perishable Agricultural Commodities Act (PACA), and purported buyer moved to dismiss. The District Court, Garaufis, J., held that: (1) venue was proper; (2) sellers established irreparable harm required for preliminary injunction; (3) sellers established likelihood of success on the merits of their PACA claims; and (4) purported buyer was PACA trustee for purposes of preliminary injunctive relief.

Motion for preliminary injunction granted; motions to dismiss denied.

**1. Factors ⇐59**

Under Perishable Agricultural Commodities Act (PACA), PACA trust is formed at the moment produce is shipped to buyer and remains in effect until seller is paid in full. Perishable Agricultural Commodities Act of 1930, § 5(c), 7 U.S.C.A. § 499e(c); 7 C.F.R. § 46.46(c)(1).

**2. Factors ⇐59**

Pursuant to Perishable Agricultural Commodities Act (PACA), produce buyer becomes trustee and has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.

**3. Factors ⇐59**

Produce buyers who dissipate or otherwise spend the proceeds of trust created pursuant to Perishable Agricultural Commodities Act (PACA), without making full payment for produce to seller, are in breach of their fiduciary duties under PACA. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.

**4. Federal Courts ⇐79**

Venue was proper, in produce sellers' action against corporate buyer under Perishable Agricultural Commodities Act (PACA), in the Eastern District of New York, given that both buyer's corporate office and address listed on certification of incorporation for Secretary of State to mail process, as buyer's designated agent for service of process, were in county that was part of Eastern District, and therefore buyer would be domestic corporation subject to general personal jurisdiction if Eastern District were separate state. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.; 28 U.S.C.A. § 1391(c); N.Y.McKinney's Business Corporation Law § 304.

**5. Constitutional Law ⇐305(6)**
**Federal Courts ⇐106**

Although both office of corporation and principal place of business of purported corporate buyer of produce were in Southern District of New York, venue of produce sellers' action against purported

buyer under Perishable Agricultural Commodities Act (PACA) was proper in Eastern District of New York, pursuant to statute under which purported buyer was deemed to "reside" in Eastern District if its district contacts would support personal jurisdiction if district were separate state, given evidence that purported buyer was doing business in Eastern District, subjecting it to personal jurisdiction under New York law, and that its contacts with Eastern District were continuous and systematic, satisfying due process requirements for general personal jurisdiction. U.S.C.A. Const.Amend. 14; Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.; 28 U.S.C.A. § 1391(c); N.Y.McKinney's CPLR 301.

**6. Constitutional Law ⬅305(6)**

   **Federal Courts ⬅79**

   In deciding whether corporation was subject to personal jurisdiction in Eastern District of New York, for purposes of venue statute deeming corporation to "reside" in district for which corporation's contacts would support personal jurisdiction if district was separate state, in addition to finding jurisdiction under New York law, court was required to find that exercise of jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amend. 14; 28 U.S.C.A. § 1391(c).

**7. Corporations ⬅665(1)**

   Under New York law, foreign corporation may be found to be subject to general personal jurisdiction if it is engaged in such a continuous and systematic course of doing business within forum as to warrant a finding of its presence in jurisdiction, and, to sustain such a finding, corporation must do business within forum not occasionally or casually, but with a fair mea-

sure of permanence and continuity. N.Y.McKinney's CPLR 301.

**8. Corporations ⬅665(1)**

   Factors considered when determining whether foreign corporation is subject to general personal jurisdiction under New York law, on grounds that it is engaged in such a continuous and systematic course of doing business within forum as to warrant a finding of its presence there, include existence in the state of an office, the solicitation of business, the presence of bank accounts or other property, and the presence of employees or agents. N.Y.McKinney's CPLR 301.

**9. Constitutional Law ⬅305(5)**

   For general personal jurisdiction to be proper, federal due process requires a finding that foreign defendant's contacts with forum state are sufficient, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. U.S.C.A. Const.Amend. 14.

**10. Constitutional Law ⬅305(6)**

   To sustain a finding of general personal jurisdiction over foreign corporation under federal due process principles, corporation's contacts must be continuous and systematic. U.S.C.A. Const.Amend. 14.

**11. Injunction ⬅138.1**

   Obtaining a preliminary injunction requires a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

**12. Injunction ⬅138.37**

   Standard for obtaining preliminary injunction applies with equal force in actions for injunctive relief brought under Perish-

**HORIZON MARKETING v. KINGDOM INTERN. LTD.**    **133**
Cite as 244 F.Supp.2d 131 (E.D.N.Y. 2003)

able Agricultural Commodities Act (PACA). Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.

### 13. Injunction ⚖138.37

Produce sellers seeking preliminary injunctive relief against alleged produce buyers, pursuant to Perishable Agricultural Commodities Act (PACA), established requisite irreparable harm in light of risk that buyers would dissipate PACA trust without paying sellers, particularly given that one buyer was no longer in business and was in process of liquidating its assets. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.

### 14. Injunction ⚖138.37

Produce sellers seeking preliminary injunctive relief established likelihood of success on the merits of their claims for payment under Perishable Agricultural Commodities Act (PACA), inasmuch as sellers and alleged buyers had PACA licenses and were subject to statute, sellers submitted unpaid invoices bearing statutory notice language required to preserve their entitlement to PACA trust proceeds, and sellers' entitlement to payment was not in dispute. Perishable Agricultural Commodities Act of 1930, § 5(c)(3, 4), 7 U.S.C.A. § 499e(c)(3, 4).

### 15. Injunction ⚖138.37

Produce sellers were entitled to preliminary injunctive relief against corporation from which payment for produce was sought pursuant to Perishable Agricultural Commodities Act (PACA), notwithstanding corporation's contention that related company was buyer and thus was only party properly subject to injunction, given that corporation, as consignee named in bills of lading, was presumptive owner and receiver of produce, that original invoices produced by corporation, its principals, and

related company indicated that corporation was buyer of produce, and that corporation took no steps to correct its purportedly erroneous designation as buyer in invoices or to otherwise document that it was not buyer subject to fiduciary duties associated with being PACA trustee. Perishable Agricultural Commodities Act of 1930, § 5(c)(2-4), 7 U.S.C.A. § 499e(c)(2-4); 49 U.S.C.A. § 80102(3); 7 C.F.R. § 46.46(a)(1, 5).

### 16. Factors ⚖59

Under Perishable Agricultural Commodities Act (PACA), invoices presumptively indicate both seller and buyer of produce for purpose of preserving seller's right to PACA trust assets received by buyer. Perishable Agricultural Commodities Act of 1930, § 5(c)(3, 4), 7 U.S.C.A. § 499e(c)(3, 4); 7 C.F.R. § 46.46(a)(5).

### 17. Factors ⚖59

That related company issued checks to pay for some purchases of produce did not preclude finding that corporation listed on bills of lading and invoices ordered and received produce, such that corporation could not be found to be trustee under Perishable Agricultural Commodities Act (PACA) in produce sellers' action for amounts owed, particularly given testimony that corporation transferred funds to related company. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.

### 18. Factors ⚖63

Even if related company sold produce for which produce sellers sought payment, corporation that allegedly bought and received produce was also liable under Perishable Agricultural Commodities Act (PACA), under which trust was impressed not only on proceeds derived from sale of produce, but on produce itself. Perishable Agricultural Commodities Act of 1930,

§ 5(c)(2), 7 U.S.C.A. § 499e(c)(2); 7 C.F.R. § 46.46(b).

**19. Factors ⟳59**

Under Perishable Agricultural Commodities Act (PACA), burden is on produce buyer to demonstrate the source of PACA trust assets. Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq.; 7 C.F.R. § 46.19.

**20. Corporations ⟳1.4(1), 1.5(1)**

The law of piercing the corporate veil applies when a party wishes to hold an individual or a related corporation liable for the acts of another corporation.

————————

David A. Adelman, Keaton & Associates, P.C., Palatine, IL, Elizabeth A. Haas, Barr & Haas, LLP, Spring Valley, NY, for Plaintiff.

Leonard Kreinces, Kreinces & Rosenberg, P.C., Westbury, NY, for Defendant.

*MEMORANDUM AND ORDER*

GARAUFIS, District Judge.

Plaintiffs, unpaid sellers of produce, move this court for a preliminary injunc-

tion, pursuant to Federal Rule of Civil Procedure 65, restraining defendants, produce buyers, from dissipating assets that are part of a trust formed under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. § 499a, *et seq.* For the following reasons the preliminary injunction is GRANTED as to both corporate defendants.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs Horizon Marketing ("Horizon") and Venida Marketing Co. ("Venida") are sellers of produce in interstate commerce. (Amended Complaint ("Am. Compl."), ¶ 1.) Defendants Kingdom International Limited ("Kingdom") and Dong Ku Ra Mi Corp. ("Dong") are two New York corporations which allegedly bought large amounts of fresh fruits from plaintiffs.[1] (*See id.*, ¶¶ 5–8.) Defendant Ko–Yu Mo ("Mo") owns 85% of defendant Kingdom,[2] and 50% of defendant Dong. (*See* Transcript of Dec. 26, 2002 Hearing on Order to Show Cause for Preliminary Injunction ("Dec. 26 Tr."), at 4–5; Affidavit of Gibson Mo ("Mo Aff."), Exh. C.) Defendant Mei–Chuen Dai owns the remaining 15% of Kingdom.[3] The remaining 50% owner of Dong is non-party Jung Sook Kang.[4] (Mo Aff., Exh. C.)

———

1. To be clear, defendants do not dispute that Dong was a purchaser. The central dispute is whether Kingdom was also a purchaser during the relevant time period.

2. In his affidavit, Mr. Mo stated that he was the "sole principal" of Kingdom. (Mo Aff. ¶ 1.) Whether Mr. Mo in fact owns all of Kingdom, or 85% of it, is not material in light of my decision.

3. At the December 26, 2002 hearing, Defense counsel stated that the caption incorrectly states that Mei–Chuen Dai is also known as "John Chuen". (Dec. 26 Tr., at 4.) It is not entirely clear who "John Chuen" is. At one point in his testimony, Mr. Mo said that John

Chuen is the sales manager for Dong. (*Id.* at 9.) Later, Mr. Mo's attorney, in an effort to clarify the record, informed the court that the name of Dong's sales manager is Ju Gil Joen, and that plaintiffs may have been confused by the similarity in the way the names sound. (*Id.* at 15.) Mr. Mo then testified that Ju Gil Joen is usually called "John". Thus, it appears that plaintiffs dealt with a sales manager whom they believed was named "John". That person, however, is not defendant Mei–Chuen Dai.

4. The confusion in names continues, as Mr. Mo's affidavit identifies John Chuen as "the remaining principal of Dong." (Mo Aff. ¶ 5.)

The instant suit concerns various purchases of fruits from plaintiffs during September and October 2002. The amount plaintiffs claim is due for these purchases is $220,091.15. Plaintiffs maintain that they sold the produce to both Kingdom and Dong, believing that Dong was "a division or trade name of Kingdom." (Am. Compl., ¶¶ 5, 7.) Accordingly, they seek a preliminary injunction against both corporate defendants. Kingdom argues, however, that despite plaintiffs' belief, only Dong bought the produce and only Dong should be subject to the injunction.

[1–3] The sales of produce in this case are subject to the Perishable Agricultural Commodities Act, 1930, ("PACA"), 7 U.S.C. § 499a, *et seq.* Under § 5(c) of PACA, 7 U.S.C. § 499e(c), buyers of produce subject to PACA are required to hold proceeds from the sale of such produce in trust for the benefit of the sellers. *See* 7 U.S.C. § 499e(c)(2). This is meant to ensure that sellers are paid in full from the proceeds derived from the re-sale of the produce. Under the statute, the trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full. *See* 7 C.F.R. § 46.46(c)(1); *In re Kornblum & Co.,* 81 F.3d 280, 286 (2d Cir.1996) (agreeing with creditors' position that trust is formed upon sale of produce); *Matter of Snyder,* 184 B.R. 473, (D.Md.1995). The buyer—in this case Dong or both Kingdom and Dong—therefore becomes a trustee and "has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary." *C.H. Robinson Co. v. Alanco Corp.,* 239 F.3d 483, 488 (2d

Cir.2001). Buyers who dissipate or otherwise spend the proceeds of the trust without making full payment to the seller are in breach of their fiduciary duties. That much is clear. The wrinkle in this case is deciding whether Kingdom is also a buyer/trustee, or whether Dong is the only liable corporate party.[5]

Kingdom is a New York corporation formed in November 1990. (Mo Aff., Exh. A.) While its certificate of incorporation lists New York County as the location of the corporate office, Mr. Mo testified that Kingdom shares an office with Dong at 41–25 Kissena Boulevard in Flushing, Queens, (Dec. 26 Tr. at 17–18, 31), a fact confirmed by Kingdom's bank statement, which also bears the Flushing address. Kingdom's principal place of business, 1350 Lafayette Avenue, appears to be the Hunts Point Market in the Bronx. Dong was incorporated in May 2002, and has its corporate office at 41–25 Kissena Boulevard, in Flushing, Queens. (Mo Aff., Exh. B.) It appears that while it was in business,[6] Dong also operated out of the Hunts Point Market, and its bank statements list 1350 Lafayette Avenue as its address. According to Mr. Mo, Kingdom is in the business of importing food, while Dong purchases produce domestically. (Mo Aff. ¶ 4.)

The parties' business relationship began in the Spring of 2002. At that time, Dong did not have a PACA license, and therefore was not able to purchase or sell produce.[7] *See* 7 U.S.C. § 499e(a); Mo. Aff. ¶ 5. Due to this circumstance, Mr. Mo claims that plaintiffs, and other produce suppliers, agreed to sell produce to Dong,

---

**5.** The parties do not dispute that Dong was a purchaser, and is liable under PACA. In fact, it consented to the continuation of the Temporary Restraining Order. (*See* Dec. 26 Tr., at 73.)

**6.** According to Mr. Mo, Dong is no longer buying or selling produce; it is in liquidation. (Dec. 26 Tr. at 20–21, 59–60, 66, 74–75.)

**7.** It is undisputed that at all relevant times both plaintiffs as well as Kingdom had valid PACA licenses.

but bill Kingdom because it had a PACA license. (Mo Aff. ¶¶ 5–6.)  Likewise, customers of Dong would pay Kingdom, which would deposit the proceeds of Dong's sales into its (Kingdom's) account, and then issue its own check to Dong. (*See* Pl. Exh. 3).  It appears that this was typical of defendants' practice in July and August 2002.  Mr. Mo testified that "before July, [Dong Ku Ra Mi] used Kingdom's name because [it didn't] had a [PACA] license.  People [paid] Kingdom—pay [Dong Ku Ra Mi] by Kingdom's name."  (Dec. 26 Tr., at 21.)  Mr. Mo also stated that after July 2002, although some of Dong's customers began paying Dong directly, other customers continued to pay Kingdom.[8]

Mr. Mo maintains that the "parties had agreed that once Dong received it[s] PACA license that it would then be the purchaser of the commodities sold by Horizon and Venida.  The fact remains that it was always Dong which purchased the product and it was always Dong which paid for the product." (Mo Aff. ¶ 6.)  In support of this assertion, Mr. Mo produced checks drawn in September and October on Dong's corporate account, payable to each of the plaintiffs.[9]  Also, Dong produced handwritten invoices to its customers, ostensibly showing that it sold the produce received from plaintiffs.  (Mo Aff., Exh. H.)  Thus, Kingdom urges the court not to disregard the separate corporate identity of each company, and recognize that since Kingdom "never sold those commodities . . . . never took custody of those commodities . . . . never received these commodities or received any monies derived from these commodities," it cannot be deemed a PACA trustee in this action.  (Mo Aff. ¶ 11.)

Plaintiffs, on the other hand, maintain that when John Chuen contacted plaintiffs in the Spring, he represented that he was with Kingdom, and that plaintiffs agreed to sell only to Kingdom, relying on "Kingdom's name, Kingdom's credit references, which were checked out[, and] Kingdom's license from the USDA to transact the produce sales and purchases."  (Transcript of Dec. 18, 2002 Hearing on Order to Show Cause ("Dec. 18 Tr."), at 4–5.)  The invoices and bills of lading issued contemporaneously with the sales indicate that the produce was sold and delivered to Kingdom at the Bronx address, (Def. Exhs. B, C), but the invoices attached to plaintiffs' complaint and amended complaint list the buyer as "Kingdom/Dongkurami" at the Flushing address.  (Am. Compl., Exhs.A, B.)  Plaintiffs explain this discrepancy by acknowledging that they were asked by defendants to modify their records to indicate that Dong, rather than Kingdom, was the buyer, but rejected that request because Dong had "no credit history [and] no credit reference."  (Dec. 18 Tr., at 5.)  Instead, out of a desire to accommodate defendants, plaintiffs re-issued invoices for sales that had already occurred but listed both Kingdom and Dong as buyer, with the Flushing address, as designated by defendants.  (*Id.*)  Plaintiffs argue that under PACA, the trust follows the produce, and, regardless of who paid, Kingdom ordered the produce,

---

**8.** The checks produced by Kingdom at the December 26 hearing bear notations indicating that they were drawn for the purpose described here.  Although Mr. Mo testified that this practice occurred only through July 2002, the checks indicate that Kingdom continued to pay Dong in August as well.  (*See* Dec. 26 Tr., at 25–26; Plaintiffs' Exhibit 3.)

Since Dong only received its PACA license on or about August 27, 2002, (Mo Aff., Exh. C), the checks written in August merely confirm this method of doing business.

**9.** It should be noted that none of the invoices noted on those checks include the unpaid invoices that are the subject of this suit.

accepted delivery of the produce, and received the proceeds of the sale of the produce. Whatever arrangement Kingdom and Dong may have had with each other is irrelevant, because as far as plaintiffs were concerned, they were dealing only with Kingdom, believing that "Dong was a division or trade name of Kingdom." (Am.Compl.¶ 7.)

On December 11, 2002, plaintiffs filed a complaint, an application for a temporary restraining order and preliminary injunction, and a memorandum of law in support. On that date, I issued an Order to Show Cause ("Dec. 11 Order") requiring the parties to appear on December 18. On December 17, defendants filed Mr. Mo's affidavit in opposition, arguing that venue was not proper and that plaintiffs' claims against Kingdom ought to be dismissed under Rule 12(b)(6).[10]

On December 18, 2002, the return date of the Order to Show Cause, counsel for defendants informed the court that he was representing all the defendants except Dong. Accordingly, as Dong failed to appear pursuant to my Dec. 11 Order, I issued a Temporary Restraining Order against it, and continued the hearing until December 26, 2002. I also ordered both corporate defendants to produce their financial records from July 2002 through December 2002. Prior to the December 26 hearing, defendants submitted a memorandum of law in support of their position that the corporate identity of each defendant must be kept separate and that only Dong was liable to plaintiffs. On December 26, all parties appeared, but at that time the same defense counsel represented all defendants. The court heard testimony from

Mr. Mo and oral argument on the preliminary injunction application. I continued the TRO against Dong, with its consent, and reserved decision on the injunction against Kingdom.

## DISCUSSION

### I. Jurisdiction and Venue

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the cause of action arises under federal law, 7 U.S.C. § 499a, *et seq.* In addition, PACA vests jurisdiction in the district courts over "actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499e(c)(5).

Defendants argue that venue is not proper in this district, as all relevant events occurred in the Bronx, both corporate defendants operate their businesses in the Bronx and the produce was shipped to the Bronx.[11] (*See* Mo Aff. ¶ 10; Dec. 18 Tr., at 13, 30.) I previously ruled that venue was proper in the Eastern District of New York. (Dec. 18 Tr., at 30.) Here, I merely set forth more fully my reasons for that ruling.

Questions of venue in cases such as this one are governed by 28 U.S.C. § 1391(b). Under that provision, actions may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Here, although all defendants reside in New York, the court must also consider the venue rules applicable to corporations. Under 28 U.S.C. § 1391(c),

> a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal

---

**10.** Defendants requested that the affidavit be treated as a motion to dismiss, but failed to include a memorandum of law because, in their expert opinion, "none need be submitted." (Mo Aff. ¶ 12.)

**11.** Bronx County is part of the Southern District of New York.

jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.

Thus, the issue of venue turns on whether Kingdom, Dong, or either of them "resides"—that is, subject to personal jurisdiction—in the Eastern District, if it were a separate state. As both corporations are concededly New York corporations, the court must engage in the somewhat artificial process of deciding whether each corporation is subject to personal jurisdiction in Queens County (part of the Eastern District), or Bronx County (part of the Southern District).

**[4]** Dong's residence is obvious from its Certificate of Incorporation. (Mo Aff., Exh. B.) That document states that the office of the corporation is in Queens County, and the address listed for the Secretary of State, as its agent, to mail process is the Flushing address. (*Id.*) Being a domestic corporation (domestic to Queens County, that is), it is subject to general jurisdiction, by virtue of designating the Secretary of State as its agent for service of process. *See Kaufman v. Luzern,* 1996 WL 79322, at *4 (S.D.N.Y. Feb.23, 1996); *see also* N.Y. Business Corporation Law § 304. Such designation "has been equated with a form of constructive consent to personal jurisdiction." *Kaufman,* 1996 WL 79322, at *4 (internal quotation marks and citation omitted). Thus, were the Eastern District of New York a separate state, containing Queens County, Dong would be a domestic corporation subject to general jurisdiction. Ac-

cordingly, venue in the Eastern District is proper as to Dong.

**[5]** Kingdom's Certificate of Incorporation lists New York County as the office of the corporation; its principal place of business, according to defense counsel, is in the Bronx. Both of these locations are part of the Southern District. Thus, for purposes of this venue analysis, I regard Kingdom as a foreign corporation in relation to Queens County and the Eastern District.

**[6]** Deciding whether Kingdom is subject to personal jurisdiction in the Eastern District requires an analysis of the New York law on personal jurisdiction. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997) ("In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process.") (internal quotation marks omitted). In addition to finding jurisdiction under New York law, the court must find that such exercise of jurisdiction "would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir.2002).

**[7, 8]** Under New York law, Kingdom may be subject to personal jurisdiction if it is "doing business" in the Eastern District of New York. *See* N.Y. C.P.L.R. § 301; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57–58 (2d Cir.1985) (noting that C.P.L.R. § 301 "keeps alive the case law existing prior to its enactment, which provided that a corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts"). Kingdom may be found to be subject to

general personal jurisdiction if it "is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990) (internal quotation marks and citation omitted). To sustain this finding, Kingdom must do business in the Eastern District "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917) (Cardozo, J.) (quoted in *Landoil Resources Corp.*, 918 F.2d at 1043). The factors considered in this determination include "the existence of an office in [the Eastern District]; the solicitation of business in [the Eastern District]; the presence of bank accounts or other property in [the Eastern District]; and the presence of employees or agents in [the Eastern District]." *Landoil Resources Corp.*, 918 F.2d at 1043.

**[9, 10]** The federal due process analysis requires a finding that Kingdom's contacts with the Eastern District are sufficient "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bank Brussels Lambert*, 305 F.3d at 127 (quotation marks and citations omitted). In order to sustain a finding of general jurisdiction in the Eastern District, Kingdom's contacts must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Application of these principles to Kingdom's activities in Queens County and the Eastern District indisputably supports a finding of personal jurisdiction, and therefore venue, in this court. Mr. Mo testified that Kingdom shares an office with Dong in Flushing, Queens. (Dec. 26 Tr., at 17, 31.) Moreover, both corporations apparently have employees in Queens, as process was served and accepted at the Flushing address on behalf of both corporate defendants. Mr. Mo testified that he signs checks at the Flushing office. (*Id.*) Kingdom also maintains a bank account at a Citibank branch located in Flushing, and had, until recently, another bank account at an Asia Bank branch also located in Flushing. (*Id.* at 12.) Kingdom has a listing in the Queens, but not the Bronx, phone directory. Finally, it should be noted that although Kingdom's Certificate of Incorporation lists New York County as the site of the corporate headquarters, a recent visit to the New York Secretary of State's website [12] disclosed an address in Flushing as the site of the executive office and the address for service of process. Thus, pursuant to C.P.L.R. § 301, Kingdom is undoubtedly doing business in the Eastern District, which subjects it to personal jurisdiction. Furthermore, its contacts with the Eastern District are continuous and systematic, thus satisfying the requirements of Due Process. Accordingly, venue, for Kingdom, is likewise proper in the Eastern District.

## II. Preliminary Injunction

### A. *Standard for Injunctive Relief*

**[11, 12]** The now well-established standard in the Second Circuit for obtaining a preliminary injunction requires a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d

---

**12.** http:// wdb.dos.state.ny.us/corp—public/    corp—wdb.corp—search—inputs.show.

70, 72 (2d Cir.1979) (per curiam). That standard applies with equal force in cases, such as this one, brought under PACA for injunctive relief. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990). Plaintiffs have amply demonstrated that the risk of irreparable harm is present, and that they are likely to succeed on the merits.

[13]    First, the irreparable harm in this case, as in other PACA cases, is the risk that a produce buyer will have dissipated the PACA trust without paying the produce seller, thus leaving the produce seller out of luck and out of money. Indeed, the protection of produce sellers from this predicament was one of the main reasons cited by Congress in enacting the trust provisions of PACA. Congress recognized that most produce sellers are small businesses which are "least able to withstand the losses" that result from dissipation of trust assets through late payment or business failure. H.R.Rep. No. 98–453, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406. Moreover, because of a seller's economic position, if he "cannot realize any returns on the sale of the crop when due, he may not be able to survive." *Id.* In this case, this danger has already materialized in that Dong is no longer in business and is in the process of liquidating its assets, which consist of approximately $80,000 in receivables to be shared between plaintiffs and six other creditors. (*See* Dec. 26 Tr., at 73–75.) Accordingly, the court finds that there is a substantial risk of further irreparable harm and that injunctive relief is necessary to preserve the status quo.

[14]    Plaintiffs have also demonstrated a likelihood of success on the merits in order to obtain injunctive relief. Under PACA, a seller loses the benefits of the statutory trust unless it informs the buyer of its intention to preserve its entitlement to the trust proceeds. *See* 7 U.S.C. § 499e(c)(3). Notice under the statute may be given by "ordinary and usual billing or invoice statements," which must include specific language informing the buyer of the seller's intention to preserve its rights to the trust. 7 U.S.C. § 499e(c)(4). Both plaintiffs and defendants have PACA licenses and are therefore subject to the statute. Plaintiffs have submitted unpaid invoices, all of which bear the exact language required by the statute, thus satisfying the notice requirement and preserving their interest in the trust. Moreover, that plaintiffs are entitled to payment is not in dispute. No one has questioned, for instance, whether the produce that was delivered and accepted conformed to the relevant agreements. Having provided produce as required, and not having been paid as agreed, plaintiffs have established their entitlement to payment under PACA. The only issue in dispute is the identity of the buyer. Thus, the likelihood of plaintiffs' success on the merits, as to at least one—if not both—of the corporate defendants, is practically unquestioned.[13]

## B.  *Identity of the Produce Buyer*

### 1.  Invoices and Bills of Lading

[15]    The documentary evidence offered in this case establishes that Kingdom purchased the produce at issue and is a PACA trustee. First, it is undisputed that Kingdom was the original buyer, since Dong

---

**13.**  That defendant Kingdom challenges *its* obligation to pay, and thus argues that plaintiffs have not shown a likelihood of success on the merits as to it, does not alter this portion of the preliminary injunction analysis. I merely point out that once the proper buyer(s) is (are) identified, injunctive relief is appropriate because all of the requirements for such relief have been met.

did not have a PACA license when the parties began their business relationship.[14] Plaintiffs checked Kingdom's credit references and began to sell produce to that company. (*See* Dec. 18 Tr., at 4–5.) Most importantly, however, the invoices and bills of lading [15] issued contemporaneously with the produce shipments indicate that the produce was sold and delivered to Kingdom. (Def.Exhs.B, C.) "A bill of lading describes the goods shipped, sets forth the identity of the shipper (or consignor) and the buyer (or consignee), and directs the carrier to deliver the freight to a certain location or person." *International Knitwear Co. v. M/V Zim Canada*, 1994 WL 924203, at *3 (S.D.N.Y. Oct.6, 1994). Likewise, the federal Bill of Lading Act, 49 U.S.C. § 80101, *et seq.*, which applies in this case, *see id.* § 80102(3), defines "consignee" as the person in the bill of lading "to whom the goods are to be delivered." *Id.* § 80101(1).

The PACA trust is impressed on produce that is "received" by a merchant, dealer or broker. *See* 7 U.S.C. § 499e(c)(2). PACA regulations define "received" to mean "the time when the buyer, receiver, or agent gains ownership, control, or possession of the perishable agricultural commodities." 7 C.F.R. § 46.46(a)(1). Since Kingdom is the consignee named in the bills of lading, it is the presumptive owner and receiver of the produce, and, hence, a PACA trustee. *See The Carl F. Roses*, 177 U.S. 655, 683, 20 S.Ct. 803, 44 L.Ed. 929 (1900) ("the legal effect of a bill of lading [is] to vest ownership in the consignees"); *Hickman, Williams & Co. v. Murray Transp. Co.*, 31 F.Supp. 820, 822 (S.D.N.Y.1940) (noting

that the consignee listed on a bill of lading is the presumptive owner of the cargo); 49 U.S.C. § 80110(a) ("the carrier must deliver the goods covered by a bill of lading on demand of the consignee named in a non-negotiable bill").

[16]  In addition to the bills of lading, the original invoices produced by defendants also indicate that Kingdom was the purchaser of the produce, and is therefore liable to plaintiffs. Under the statutory scheme, a seller must give notice of its intent to preserve the benefits of the trust to the buyer. *See* 7 U.S.C. § 499e(c)(3). Such notice may be given through the seller's "ordinary and usual billing or invoice statements." *Id.* § 499e(c)(4). PACA regulations define "ordinary and usual billing or invoice statements" to mean "communications customarily used *between parties to a transaction* in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes." 7 C.F.R. § 46.46(a)(5) (emphasis added). Thus, PACA clearly envisions that invoices presumptively indicate both the seller and the buyer for the purpose of preserving the seller's right to the trust assets received by the buyer.

Furthermore, in enacting the 1995 amendments to PACA, Congress eliminated the requirement that sellers file their notice with the United States Department of Agriculture. Under the 1995 amendments, sellers "may use standard invoices or other billing statements to provide notice *to the buyer* of intent to preserve trust benefits in the event that payment is late

---

14.  Counsel for plaintiffs also stated that the person who first contacted plaintiffs represented that he was from Kingdom. (*See* Dec. 18 Tr., at 4.) That statement, however, was contradicted by Mr. Mo. (*See* Dec. 26 Tr., at 9.) Although I make no finding on this point

at this stage in the proceedings, this is an issue that ought to be explored further by the parties during discovery.

15.  The bills of lading at issue here were non-negotiable.

or the payment instrument is not honored." H.R.Rep. No. 104–207, at 9 (1995), *reprinted in* 1995 U.S.C.C.A.N. 453, 456 (emphasis added). Congress intended the new amendments to "strengthen and improve the operation of the trust." *Id.* Moreover, it is clear that Congress intended "the effect of notice provided through the use of usual billing or invoice statements to be the legal equivalent to the [then-]current practice of providing notice subsequent to the payment date by means independent of the billing statement or invoice." *Id.* at 9–10, 1995 U.S.C.C.A.N. at 456–57. Thus, PACA clearly assigns a vital function to the invoice used by a seller precisely because the party named in such invoice (which serves to give notice), is the PACA trustee to whom notice must be given.

Kingdom's argument that the name of the entity in a bill or invoice has no bearing on the identity of the PACA trustee wholly eviscerates PACA's notice provisions, and leaves sellers who use invoices without the benefit of the trust. Under Kingdom's view, sellers wishing to preserve their interest in the PACA trust could not rely on their "ordinary and usual billing or invoice statements" but would have to follow the produce to determine who actually received it. That result turns the statutory scheme on its head and is clearly inconsistent with the language of the statute, whose intent was to provide "convenience and cost savings to the unpaid supplier." H.R.Rep. No. 104–207, at 9, *reprinted in* 1995 U.S.C.C.A.N. at 456.

Finally, if Kingdom's designation in the invoice as buyer was erroneous and wrongly subjected it to the fiduciary duties associated with being a trustee, one would have expected a reasonable business person to

take steps to correct such an important mistake and have sufficient documentation to prove it. The only evidence presented was Mr. Mo's testimony that he told Dong's suppliers and customers (but not plaintiffs specifically) to correct their records to indicate that Dong was the entity purchasing and selling produce instead of Kingdom.[16] Even if there were testimony that plaintiffs were informed that they were invoicing the wrong party, it is doubtful that such testimony standing alone and unaccompanied by documentary proof, would be admissible under the parol evidence rule. *See Tray–Wrap, Inc. v. Meyer,* 1994 WL 710804, at *4 (S.D.N.Y. Dec.20, 1994) (stating that "where PACA is silent as to a material part of the transaction at issue, the provisions of the [New York] UCC apply"); *Sunkyong America, Inc. v. Beta Sound of Music Corp.,* 199 A.D.2d 100, 101, 605 N.Y.S.2d 62, 63 (1st Dep't 1993) ("The parol evidence rule embodied in UCC 2–202 bars the introduction by the defendant of proof of any alleged oral agreement between the parties which would vary the terms of the plaintiffs' invoices, which were the final written expression of the parties' sales agreement.").

The court recognizes that defendants are correct in their observation that the invoices annexed to plaintiffs' pleadings are not the same invoices that were issued when the produce was shipped. The original invoices, as noted above, listed Kingdom International at the Bronx address, as the buyer. (*See* Def. Exhs. B, C.) By contrast, the invoices annexed to the pleadings listed "Kingdom/Dongkurami" at the Flushing address, as the buyer. Plaintiffs' explanation for this discrepancy is that after they refused defendants' request to change the account solely to Dong's

---

**16.** Although counsel for defendants informed the court that Mr. Mo told plaintiffs that they were invoicing the wrong party, (*see* Dec. 26

Tr., at 71), counsel's statement is not evidence.

HORIZON MARKETING v. KINGDOM INTERN. LTD.    **143**
Cite as 244 F.Supp.2d 131 (E.D.N.Y. 2003)

name, they added Dong as an accommodation. (*See* Dec. 18 Tr., at 5.) But even these corrected or amended invoices—or, as defense counsel calls them, "contrived and manufactured" invoices—never *eliminated* Kingdom as a purchaser; they merely *added* Dong. Defense counsel emphatically and continuously argues that these invoices somehow indicate that "plaintiffs always dealt with Dong directly." (Defendants' Memorandum of Law, at 3.) But counsel never explains—nor could he without perverting logic and common sense—how the addition of a new party to plaintiffs' invoices, without elimination of the previous party, demonstrates that the newly added party was always the party with whom plaintiffs dealt.[17]

2. Kingdom's Other Evidence

Kingdom's other arguments are similarly wrongheaded and need not detain the court very long.

Kingdom's main argument is that Dong was the purchaser all along, and only it should be subject to the preliminary injunction. In support of this contention, Kingdom offers checks drawn on Dong's account to plaintiffs as payment for earlier shipments of produce, handwritten invoices ostensibly showing that Dong sold produce received from plaintiffs, (*see* Mo Aff., Exh. H), and extensive legal argument concerning the doctrines of corporate separateness and piercing the corporate veil.

First, as a general matter, Kingdom would have this court believe that it was Dong—not Kingdom—that received the produce shipments in the Bronx. Curiously, however, no evidence to support this was offered. Indeed, as both Kingdom and Dong had facilities in the Bronx to receive shipments, and since a corporation can only act through its employees and agents, the court is left to wonder why no testimony was offered concerning whether employees of Dong or of Kingdom actually signed for the produce and took possession of it.[18] Without evidence to the contrary, the court must rely on the documentary proof before it.[19]

I also note that PACA regulations require receivers of produce to maintain records on all produce received. Such records

shall clearly show for each lot the date of arrival and unloading; whether received by freight, express, truck, or otherwise; the car initials and number; the truck license number and the driver's name or the name of the trucking firm; the number of packages or the quantity received; the kind of produce; *the name and address of the consignor or seller;* whether the produce was purchased;

---

**17.** Counsel's musings only serve to obfuscate the issue, without providing a scintilla of legal support or rational argument for his position. The following statement is indicative of counsel's confused reasoning in this matter: "These original invoices, Your Honor, for the record say Kingdom International, 1350 Lafayette Avenue in the Bronx. There is nothing on these invoices to show Kissena Boulevard in Flushing or to show Kingdom at all." (Dec. 26 Tr., at 12.)

**18.** The court notes that some of the bills of lading produced by defendants bear a signature of a person whose last name is Lee. Although no testimony was elicited as to who

signed for the produce, Mr. Mo also indicated that a Jackie Lee works for Kingdom. (*See* Dec. 18 Tr., at 26.) This, too, is an issue to be developed further by the parties through formal discovery.

**19.** Although Mr. Mo testified that "Kingdom never received the shipments from the plaintiffs," (*see* Dec. 26 Tr., at 17), he did not say which *individuals* actually signed the bills of lading to take possession of the produce. His statement that a *corporation* received the produce is a non sequitur, since a corporation cannot physically do anything without its employees or agents.

consigned or received on joint account; *and the disposition of the produce,* whether jobbed or sold in carlots or trucklots, and the lot number assigned to the shipment by the receiver (as required by § 46.20).

7 C.F.R. § 46.18 (emphasis added). No such records were produced by either corporate defendant.

[17]  Next, Kingdom offers Dong's corporate checks to indicate that it paid for some purchases and was therefore always the buyer. Although this is certainly evidence that Dong was involved in the transactions, Kingdom has not directed the court to any authority stating that a party paying for produce is, *ipso facto,* the *only* buyer to whom PACA liability attaches. The checks can certainly demonstrate that Dong was *a* buyer, but that issue is not dispute. Without additional discovery, the court cannot say that these checks were the only checks tendered to plaintiffs by any of these defendants. Nor can I conclude that Kingdom did not also pay for certain shipments. Also, since Mr. Mo testified that Kingdom transferred funds to Dong, it is not at all clear whose funds Dong was expending even though its checks were used. More importantly, these checks do not, in any way, undermine the legal effect of the invoices and bills of lading. The checks do not preclude, for example, a finding that Kingdom ordered the produce and received the produce, and then transferred it to Dong to make payment. In fact, prior to Dong receiving its PACA license, this is exactly what the defendants were doing.

[18]  Kingdom also offers handwritten invoices indicating that Dong sold the produce and received the proceeds from such sales. (Mo Aff., Exh. H.) As a result, Kingdom argues, Dong is the proper trustee because it has control of the trust assets, namely, the proceeds from the sale of

the produce. Alas, Kingdom is wrong again. First, the trust is impressed not only on the proceeds derived from the sale of produce, but on the produce itself. *See* 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b). Therefore, while selling the produce is sufficient for a party to be considered a PACA trustee, nothing in the statute or the regulations absolves the buyer or receiving party—whether or not it sold the produce—from its obligation to make full payment. Thus, even if Dong sold the produce, Kingdom, as noted above, is still liable as purchaser and receiver of the produce.

[19]  Second, the invoices contain handwritten descriptions of the type of produce sold, the quantity, the unit price, the total amount of sale, the date, and the customer. The invoices conform to most of the requirements listed in the "Sales tickets" section of the PACA regulations. *See* 7 C.F.R. § 46.19. However, there is no indication on the invoices that the particular produce sold was the same produce received from plaintiffs. Thus, Dong's invoices merely show that it sold produce. But that fact is not in dispute. Rather, Dong's burden is to show that the produce it sold was the same produce received from plaintiffs. The Second Circuit has cited with approval cases from other jurisdictions that place the burden on the buyer to demonstrate the source of the trust assets. *See In re Kornblum & Co.,* 81 F.3d 280, 287 (2d Cir.1996) (citing with approval *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1012 (6th Cir.1993); *Six L's Packing Co. v. West Des Moines State Bank,* 967 F.2d 256, 258 (8th Cir.1992)). Had Dong complied with PACA regulations requiring that a "lot number shall be entered on the receiving record in connection with each shipment and entered on all sales tickets identifying and segregating the sales from

**HORIZON MARKETING v. KINGDOM INTERN. LTD.**    **145**
Cite as 244 F.Supp.2d 131 (E.D.N.Y. 2003)

the various shipments on hand" its burden of proof would have been easier. 7 C.F.R. § 46.20. Without such evidence or additional discovery, I cannot make this determination.

**[20]** Kingdom's final argument, and one on which it appears to rely principally, is that plaintiffs are urging the court to hold Kingdom liable for the acts of Dong, an entirely separate corporate entity. Kingdom argues forcefully, but mistakenly, that a finding that Kingdom is liable is tantamount to piercing the corporate veil and disregarding the separate corporate identity of each corporation. Kingdom has even provided the court with a memorandum of law (of sorts) on the subject. Unfortunately, Kingdom's reliance on this argument puts the proverbial cart before the horse. The law of piercing the corporate veil applies when a party wishes to hold an individual or a related corporation liable for the acts of another corporation. Kingdom's position, however, is grounded on the erroneous premise that only Dong is liable, and it would be wrong to require Kingdom to answer for Dong's debts. As this discussion has demonstrated, Kingdom has its own, independent basis for liability to the plaintiffs. Accordingly, Kingdom's argument, at least at this stage, is unavailing.

After more thorough discovery, Kingdom may very well demonstrate that it was never a purchaser of the produce in question. Then, and only then, will its argument on piercing the corporate veil justify the court's attention, assuming plaintiffs dispute Kingdom's lack of involvement. For now, however, it is premature to consider whether one corporation should be held liable for the debts of another. Kingdom is, of course, free to raise this issue again on a more fully developed factual record.

## III. Individual Liability

The court notes that several courts in this circuit and others, have held that in PACA cases, individuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties. *See, e.g., Bronia v. Ho,* 873 F.Supp. 854, 861 (S.D.N.Y.1995); *A & J Produce Corp. v. CIT Group/Factoring, Inc.,* 829 F.Supp. 651, 655 (S.D.N.Y.1993); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 212 (E.D.N.Y.1993); *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 348 (S.D.N.Y.1993). Accordingly, should either corporate defendant be found to be insolvent, Mr. Mo, as principal of both corporations, may be held liable to plaintiffs. At this point, however, I make no finding as to any individual liability, nor does the preliminary injunction issued herein affect Mr. Mo's personal assets.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, against both Dong and Kingdom is GRANTED. Because defendants already possess all of the PACA trust assets that are the subject of this action, the bond in this matter is hereby set at $0.00. Defendant Kingdom's motions to dismiss for improper venue, and pursuant to Fed.R.Civ.P. 12(b)(6) are DENIED without prejudice to renewal upon a more complete factual record. The preliminary injunction is annexed to this Memorandum and Order and is deemed incorporated by reference.

SO ORDERED.



# EXHIBIT 3

arbitrarily or capriciously in discontinuing total disability benefits, and we will therefore order that summary judgment be entered in favor of the defendants.

### IV.

Orvosh cross-appeals the district court's decision to deny him attorney fees pursuant to 29 U.S.C. § 1132(g). Obviously, we need not dwell on this point given our reversal of the district court's grant of summary judgment. *See Noorily v. Thomas and Betts Corp.*, 188 F.3d 153, 162 (3d Cir.1999), *cert. denied*, ___ U.S. ___, 120 S.Ct. 1555, 146 L.Ed.2d 460 (2000).

### V.

For the foregoing reasons, we will reverse the district court's grant of summary judgment in favor of Orvosh, and remand with instructions to enter summary judgment in favor of the defendants. Consequently, we will affirm the district court's denial of attorney's fees.



---

**TANIMURA & ANTLE, INC.; Tom Lange Co., Inc.; Carlsbad Produce, Inc.; Tanimura Distributing, Inc.; Steveco, Inc., Appellants,**

v.

**PACKED FRESH PRODUCE, INC.; David W. Menadier; Joe Durel, d/b/a J.D. Investments.**

No. 00 5056.

United States Court of Appeals, Third Circuit.

Argued May 25, 2000.

Filed Aug. 15, 2000.

Sellers of perishable agricultural commodities brought suit seeking injunctive relief against buyers to prevent dissipation of Perishable Agriculture Commodities Act (PACA) trust assets. The United States District Court For the District of New Jersey, William H. Walls, J., denied relief, and sellers appealed. The Court of Appeals, Rendell, Circuit Judge, held that: (1) District Court had jurisdiction to grant private injunctive relief; (2) equitable relief can issue to aid rights of sellers who qualify as PACA trust beneficiaries; and (3) because sellers adequately demonstrated likelihood of dissipation of trust fund assets and likelihood of irreparable harm, injunction should have been issued.

Reversed and remanded.

**1. Federal Courts ⬦814.1**

On review of district court's denial of injunctive relief, Court of Appeals determines whether district court erred in applying law, made clear mistake in considering proof, or abused its discretion.

**2. Federal Courts ⬦776**

District court's interpretation of statutes and regulations is reviewed de novo.

**3. Injunction ⬦54**

Perishable Agriculture Commodities Act (PACA) permits district courts to entertain actions for injunctive relief by produce sellers to restrain dissipation of PACA trust assets; provision allowing Secretary of Agriculture to pursue injunctive relief on behalf of trust beneficiaries expanded, rather than restricted, PACA jurisdiction in district courts; abrogating, *Driscoll Potatoes, Inc. v. N.A. Produce Co.*, 765 F.Supp. 174. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**4. Factors ⬦59**

Because Perishable Agriculture Commodities Act (PACA) is remedial legislation, it should be construed broadly to effectuate its purpose of ensuring payment to unpaid seller in perishable agricultural

commodities industry. Perishable Agricultural Commodities Act, 1930, § 5(c), 7 U.S.C.A. § 499e(c).

**5. Injunction ⬦110**

Absent clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction.

**6. Injunction ⬦54**

Dissipation of Perishable Agriculture Commodities Act (PACA) trust assets can render money damages inadequate, thereby necessitating equitable injunctive relief, especially when dissipation will clearly result in debtor s inability ultimately to make payment. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**7. Injunction ⬦138.31**

Sellers of perishable agricultural commodities were entitled to injunctive relief against buyers to prevent dissipation of Perishable Agriculture Commodities Act (PACA) trust assets, in view of evidence of trust dissipation and buyers inability ultimately to make payment. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**8. Injunction ⬦54**

Injunctive relief to prevent dissipation of Perishable Agriculture Commodities Act (PACA) trust assets may issue, when it is shown that trust is being depleted and likelihood is great that there will be no funds available to satisfy legal judgment against delinquent buyer. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**9. Injunction ⬦54**

Usual requirements for injunctive relief should apply to injunctions sought in aid of Perishable Agriculture Commodities Act (PACA). Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**10. Injunction ⬦138.1**

Four factors must be considered by court in deciding whether to issue preliminary injunction: (1) whether movant has shown reasonable probability of success on merits; (2) whether movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief will result in even greater harm to nonmoving party; and (4) whether granting preliminary relief will be in public interest.

**11. Injunction ⬦138.31**

Sellers of perishable agricultural commodities satisfied usual requirements for preliminary injunctive relief against buyers to prevent dissipation of Perishable Agriculture Commodities Act (PACA) trust assets; sellers sufficiently demonstrated their entitlement to payment and their status as trust beneficiaries with perfected rights, granting preliminary injunction would not result in greater harm to buyers that seller, given that buyers were already financially insolvent and owed sellers close to $1.5 million dollars, and issuance of preliminary injunction was in public interest. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**12. Injunction ⬦138.31**

Dissipation of Perishable Agriculture Commodities Act (PACA) trust satisfied irreparable harm requirement for preliminary injunctive relief. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

**13. Injunction ⬦138.31**

Dissipation of Perishable Agriculture Commodities Act (PACA) trust can satisfy irreparable harm requirement for preliminary injunctive relief, if, absent such relief, ultimate recovery is rendered unlikely. Perishable Agricultural Commodities Act, 1930, § 5(c)(5), 7 U.S.C.A. § 499e(c)(5).

———

R. Jason Read, Bartholomew M. Botta, Rynn & Janowsky, Newport Beach, CA, Jeffrey M. Chebot, [Argued], Whiteman,

**134**        **222 FEDERAL REPORTER, 3d SERIES**

Bankes & Chebot, Philadelphia, PA, Counsel for Appellants.

Before: ALITO and RENDELL, Circuit Judges, and DUHÉ, Senior Circuit Judge.*

## OPINION OF THE COURT

RENDELL, Circuit Judge.

At issue in this appeal is whether, and if so, under what circumstances, a district court can grant equitable injunctive relief to a trust beneficiary to prevent dissipation of trust fund assets under the Perishable Agriculture Commodities Act ( PACA ), 7 U.S.C. § 499a *et seq.* (1998). Appellants, Tanimura & Antle, Inc., Tom Lange Co., Carlsbad Produce, Inc., Tanimura Distributing, Inc., and Steveo Inc., are sellers of perishable agricultural commodities and beneficiaries of a statutory trust provided for by PACA. *See* 7 U.S.C. § 499e(c). Appellees, Packed Fresh Produce, Inc. and David W. Menadier,[1] are buyers of these perishable agricultural commodities and became statutory trustees under PACA upon purchase of such goods. *See id.* Appellants sought injunctive relief against Appellees to prevent dissipation of PACA trust assets and, also, against a third defendant, Joe Durel, doing business as J.D. Investments, who allegedly was converting, or already had converted, to his own use and benefit, PACA trust assets rightfully belonging to Appellants.

The District Court declined to grant injunctive relief because it believed that Appellants had an adequate remedy at law in a suit for money damages and, further, that injunctive relief was futile when the PACA trust assets were already being depleted. We first conclude that the District Court had jurisdiction to grant private injunctive relief. Second, we hold that equitable relief can issue to aid the rights of sellers who qualify as PACA trust beneficiaries, and because Appellants adequately demonstrated the likelihood of dissipation of trust fund assets and the likelihood of irreparable harm, the District Court should have granted the injunction sought. We will reverse and remand.

## I.  FACTS

In a series of transactions between November 1999 and early January 2000, Appellants sold and shipped perishable agricultural commodities to Appellees in compliance with Appellees requests. Appellees accepted and resold these commodities, but failed to pay the accumulated balance of $1,441,447.60 owed to Appellants. In response, Appellants gave proper notice of intent to preserve their rights as beneficiaries to a PACA trust, *see* 7 U.S.C. § 499e(c)(3), (4), and subsequently sought equitable relief to preserve their rights under PACA and to prevent trust dissipation.

Appellants submitted evidence to the District Court of Appellees dissipation of trust assets and precarious financial position, specifically the Appellees lack of sufficient cash or other assets to pay for the commodities in full or on time. *See* District Court Transcript ( Tr. ) at 6;  Brief for Appellant at 4. Appellees did not appear before the District Court (or file a brief on appeal) and neither they nor the District Court challenged the evidence offered by Appellants regarding the Appellees trust dissipation and detrimental financial condition. Appellants evidence includes the following: copies of Appellees checks to Appellants that were returned for insufficient funds, copies of Appellees checks that were post-dated as late as March 2000 for already-overdue balances, and affidavits from Appellants employees responsible for accounts receiv-

---

* The Honorable John M. Duhe, Jr., United States Court of Appeals Judge for the Fifth Circuit, sitting by designation.

1. According to Appellants initial complaint, David W. Menadier is the sole shareholder

and President of Packed Fresh Produce, Inc. *See* Appendix to Brief for Appellant, vol.  II, at 190.

able. These affidavits affirmed that Appellees repeatedly admitted an inability to pay the amounts rightly owed to Appellants,[2] that Appellees often promised partial payment or assured Appellants that payment was in the mail and either payment was never received or there were insufficient funds to cover the checks, and that Appellees actually made additional purchases from Appellant Tanimura & Antle, Inc. totaling $200,000 despite acknowledging an overdue balance of $400,000.

Appellants sought an order to show cause and for temporary restraint or a preliminary injunction to (1) prevent Appellees from further dissipating the PACA trust assets that belonged to Appellants and (2) require Appellees to release or otherwise set aside the PACA trust assets belonging to Appellants pending final adjudication of the complaint on file with the District Court. On appeal, Appellants argue that an injunction should have been issued to prevent dissipation of the PACA trust assets.

## II.  BACKGROUND

Congress enacted PACA in 1930 to promote fair trading practices in the produce industry. *See Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 199 (3d Cir.1998). In particular, Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers, who we will collectively refer to as buyers. *See* 7 U.S.C. § 499a *et seq.* In its original form, PACA contained two main features designed to protect sellers of perishable agricultural commodities: (1) a requirement that all buyers obtain a license from the Department of Agriculture that was revocable upon a determination that the buyer repeatedly or flagrantly violated

prohibitions of unfair conduct and (2) a procedure under which unpaid suppliers could obtain an order from the Department of Agriculture requiring the offending buyer to pay damages to the injured seller. *See* Andrew M. Campbell, Annotation, *Statutory Trust Under Perishable Agricultural Commodities Act,* 128 A.L.R. Fed. 303, 316, 1995 WL 900323 (1995).

Congress examined the sufficiency of the PACA provisions fifty years later and determined that prevalent financing practices in the perishable agricultural commodities industry were placing the industry in jeopardy. Particularly, Congress focused on the increase in the number of buyers who failed to pay, or were dilatory in paying, their suppliers, and the impact of such payment practices on small suppliers who could not withstand a significant loss or delay in receipt of monies owed. *See* H.R.Rep. No. 98 543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406; *see also In re W.L. Bradley,* 78 B.R. 92, 93 (Bankr.E.D.Pa.1987). Also, Congress was troubled by the common practice of produce buyers granting liens on their inventories to their lenders, which covered all proceeds and receivables from sales of perishable agricultural commodities, while the produce suppliers remained unpaid. *See* H.R.Rep. No. 98 543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. This practice elevated the lenders to a secured creditor position in the case of the buyers insolvency, while the sellers of perishable agricultural commodities remained unsecured creditors with little legal protection or means of recovery in a suit for damages. *See id.*

Deeming this situation a burden on commerce, Congress amended PACA in 1984 to include a statutory trust provision, 7 U.S.C. § 499e(c), which provides an additional seller s remedy, or safeguard,

---

**2.** Statements similar to the following were contained in all of Appellants affidavits: Mr. Menadier admitted to me that the amounts due as alleged herein were due and owing TDI. Despite such admissions, [he] told me that he did not have sufficient cash with which to fully and timely pay the balance due. Appendix at 39 (containing affidavit of Raymond O. Gomes, Accounts Receivable Manager for Tanimura Distributing, Inc.).

through increased credit security in the absence of prompt payment for perishable agricultural commodities.[3] *See id.* § 499e(c)(2). Under the 1984 amendment, perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpaid sellers. *See* 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(b). This trust is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee. *See* 7 U.S.C. § 499e(c)(3). To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due. *See id.* Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements. *See id.* § 499e(c)(4).[4]

PACA contains both a general remedial provision dating back to its 1930 enactment and a specific jurisdictional provision added as part of the 1984 amendment. Specifically, the original remedial provision, which remains intact today, states that liability under PACA may be enforced by:

(1) complaint to the Secretary of Agriculture as provided by the remainder of the statute, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now [on June 10, 1930] existing at common law or by statute, and the

provisions of this Act [7 U.S.C. § 499 et seq.] are in addition to such remedies.

*Id.* § 499e(b). When Congress adopted the concept of the statutory trust itself and considered its implications, it included in the trust provisions certain additional remedial language:

The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.

*Id.* § 499e(c)(5).

Appellants filed a complaint in the District Court to enforce their right to payment under the statutory provisions and sought a temporary restraining order or preliminary injunction to prevent further dissipation of trust assets. The District Court held a hearing at which it inquired into the need for equitable relief and expressed its view that Appellants were only seeking money and, accordingly, may have an adequate remedy at law. The Court also questioned whether the Appellants could benefit from enjoining further dissipation of trust assets when the assets were already being depleted. In light of its own reading and application of the decision in *Driscoll Potatoes, Inc. v. N.A. Produce Co.,* 765 F.Supp. 174 (D.N.J.1991), the District Court reasoned that an adequate remedy at law existed because Appellants were seeking money damages and, there-

---

**3.** The 1984 amendment to PACA says in relevant part:

It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest, in such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of

such commodities or products, and that such arrangements are contrary to public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest. 7 U.S.C. § 499e(c)(1).

**4.** This provision was added in 1995. The only other 1995 change that is relevant to the case before us is the numeric change of the statute s jurisdictional provision from § 499e(c)(4) to § 499e(c)(5). *See* Pub.L. No. 104 48 § 6, 109 Stat. 424 (1995).

fore, the District Court denied equitable relief.

**[1, 2]** We conclude, as further explained below, that the District Court had jurisdiction pursuant to 7 U.S.C. § 499e(c)(5). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1). Our standard of review of a district court s denial of injunctive relief requires us to determine whether the District Court erred in applying the law, made a clear mistake in considering the proof, or abused its discretion. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992); *Frank s GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 101 (3d Cir.1988). We exercise de novo review of the District Court s interpretation of statutes and regulations. *See Idahoan Fresh*, 157 F.3d at 197. Our focus in this appeal is twofold. First, we must examine our jurisdiction, specifically determining whether district courts have jurisdiction over private injunctive actions seeking to prevent dissipation of PACA trust assets. Second, we will examine whether the District Court erred in applying the law to the facts before it.

### III. DISCUSSION

**[3]** We first address an issue not specifically presented to the District Court, but one which we are compelled to examine nonetheless, namely, the jurisdiction of the District Court over the injunction motion brought by Appellants. This issue arises due to the uncertainty expressed in recent cases as to the meaning of the remedial jurisdiction language added to PACA with the statutory trust provision: does the specific grant of jurisdiction to the district courts to enable the Secretary to seek an injunction to prevent the dissipation of trust assets mean that *only* the

Secretary of Agriculture can do so? At least one Circuit Court of Appeals has addressed this issue and concluded that § 499e(c)(5) does permit district courts to entertain actions for injunctive relief by produce sellers to restrain dissipation of PACA trust assets. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 158 (11th Cir.1990). In *Frio Ice*, the district court had denied the plaintiff s request for injunctive relief to compel the defendant to segregate funds because the court believed that the statute s specific reference to the Secretary of Agriculture meant that the court lacked jurisdiction to entertain injunctive actions by private parties under PACA.[5] *See id.* at 156. However, the Court of Appeals for the Eleventh Circuit reversed, reasoning that PACA s statutory language and legislative history did not reflect a desire to preclude jurisdiction over such actions, but, rather, supported private injunctive relief in an effort to advance the statute s purpose. *See id.* at 157 58.

By contrast, the United States District Court for the District of New Jersey adopted the opposite view on the issue. *See Driscoll Potatoes, Inc. v. N.A. Produce Co.*, 765 F.Supp. 174, 179 (D.N.J.1991). In *Driscoll Potatoes*, the plaintiffs were denied injunctive relief requesting segregation of trust assets to prevent alleged trust dissipation, in part, because the court believed that Congress, in contemplation of the dissipation of trust assets, had expressly vested the Secretary of Agriculture with the obligation to prevent dissipation of trust assets.[6] *Id.* at 179. Thus, the court reasoned, district courts could not hear, or, alternatively, private trust beneficiaries could not bring, requests for equitable relief under PACA unless they were brought by the Secretary of Agricul-

---

**5.** The district court had initially granted the preliminary injunction, but subsequently vacated the injunction *sua sponte* based on its concern as to its jurisdiction. *See Frio Ice*, 918 F.2d at 156.

**6.** Although the plaintiffs in *Driscoll Potatoes* specifically sought segregation of trust assets as a form of injunctive relief, the court s overall conclusion with respect to its jurisdiction covered injunctive efforts, generally, to prevent the dissipation of assets. *See* 765 F.Supp. at 179.

ture on behalf of the trust beneficiaries. *See id.*

We conclude that the expansive reading of the statute in *Frio Ice* has more to commend it. Both the language of the statute, and the policy behind it, support this view. We note that PACA has always contained a broad remedial statement, cited above, specifying the preservation of rights and remedies available at common law. *See* 7 U.S.C. § 499e(b). When Congress amended PACA in 1984, it did not disturb this fifty-four year old statutory provision, although it obviously could have done so. Furthermore, this section is not contradicted or superseded by § 499e(c)(5), which, by its terms, does not even speak to permissible remedies, as such. Instead, § 499e(c)(5) establishes jurisdiction in the district courts for two specific types of actions: (1) actions by the trust fund beneficiaries to enforce payment from the PACA trust and (2) actions by the Secretary of Agriculture to prevent dissipation of trust assets. *See id.* § 499e(c)(5). Thus, district courts clearly have jurisdiction over actions by private parties seeking to enforce payment from the trust. The prohibition of private injunctive actions in aid of trust beneficiaries ability to carry out this enforcement provision would destroy remedies at common law, and, therefore, explicitly override the statutory mandate of § 499e(b).

Further, we read § 499e(c)(5)(ii) to expand, rather than to restrict, PACA jurisdiction in the district courts. This provision authorizes the district court to entertain, and grants standing to the Secretary of Agriculture to pursue, injunctive relief on behalf of trust beneficiaries, thereby adding to, instead of detracting from, available common law remedies. *See Frio Ice,* 918 F.2d at 158 (concluding that PACA s legislative history, when read in its entirety, illustrates that Congress, in § 499e(c)(5)(ii), was concerned with how the Secretary would fulfill his responsibilities under the statute).

**[4]** To interpret the statute to so limit the district court s jurisdiction over private injunctive actions would nullify the goal of the PACA trust and ignore Congress s intent. Because PACA is remedial legislation, it should be construed broadly to effectuate its purpose. *See Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 202 (3d Cir.1998). PACA s purpose, as Congress has crystallized, is to ensure payment to the unpaid seller in the perishable agricultural commodities industry. *See* 7 U.S.C. § 499e(c); *Frio Ice,* 918 F.2d at 159. The very amendment that contains the language in question was passed by Congress to explicitly provide a mechanism to prevent a supplier from remaining unpaid, and to provide the PACA trust as a safety net for the at-risk supplier. If PACA s trust is to have any meaning, and Congress s intent is to be effectuated in any way, trust assets must be preserved and not dissipated. If not for the preservation of trust assets through injunctive relief pending the outcome of litigation, the creation and maintenance of a trust by a spendthrift debtor will be a futile act indeed. We will not read the plain language of the statute to bring about this absurd result. *See Idahoan Fresh,* 157 F.3d at 202.

**[5]** Nor will we depart from our familiar maxim that [a]bsent a clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction. *Frio Ice,* 918 F.2d at 157 (citing *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Our reasoning is also supported by one of our sister circuits addressing the availability of private injunctive relief. In *JSG Trading Corp. v. Tray Wrap, Inc.,* 917 F.2d 75 (2d Cir.1990), the Court of Appeals for the Second Circuit, although not speaking to the precise issue before us, noted that nothing in the Act that would prohibit the court from exercising its traditional equity powers to grant a preliminary injunction at the instance of a private liti-

gant if the normal standards for such relief are met. *Id.* at 79.

**[6 8]**  We next turn to the merits of the District Court s decision to deny Appellants equitable injunctive relief, including the District Court s extensive reliance on *Driscoll Potatoes, Inc. v. N.A. Produce Co.*, 765 F.Supp. 174 (D.N.J.1991). The District Court based its ruling, in large measure, on its view that Appellants were not entitled to equitable relief because they had an adequate remedy at law. In reaching this conclusion, the Court reasoned that dissipation of trust assets does not make monetary relief inadequate because the sellers are essentially seeking monetary payment. *See* Tr. at 6, 7, 9. Applying this reasoning to Appellants claim, the Court found that Appellants could bring suit to enforce payment of the monies due and, according to its reading of the *Driscoll Potatoes* opinion, no equitable relief was available in this context when such a legal remedy existed. *See id.* However, the District Court erred in its findings because it (1) failed to recognize that the dissipation of PACA trust assets can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor s inability ultimately to make payment, and (2) incorrectly applied the reasoning of *Driscoll Potatoes* to a very different factual setting, since Appellants presented convincing evidence of both trust dissipation and the buyers inability ultimately to make payment. We conclude that an adequate remedy at law does not exist, and that injunctive relief to prevent dissipation of PACA trust assets may issue, when it is shown that the trust is being depleted and the likelihood is great that there will be no funds available to satisfy a legal judgment against the delinquent buyer.

The District Court failed to recognize that Appellants presented proof radically different from the plaintiff s proof in *Driscoll Potatoes*. In *Driscoll Potatoes*, the plaintiff sought a preliminary injunction directing the segregation of PACA trust assets into an interest-bearing account because the defendants owed the plaintiffs $11,068.50 and plaintiffs had alleged that the defendants were dissipating trust assets by using them to pay other creditors and suppliers. *See* 765 F.Supp. at 176. However, the *Driscoll* court denied injunctive relief on the merits because: (1) there was no indication that the defendant was financially unstable and, as a result, the plaintiffs had an adequate remedy at law, for they could recover all amounts owed in a suit for money damages and (2) the plaintiffs failed to make a showing of either dissipation of trust assets *or* the debtor s general financial instability, which, the Court noted, were alternative factors present in all cases granting injunctive relief in the form of segregation of assets. *See id.* at 177, 179. However, in comparison with the plaintiffs in *Driscoll Potatoes*, Appellants present facts probative of both the dissipation of trust assets *and* the general financial instability of the debtor such that the reasoning in *Driscoll Potatoes* does not inform the analysis here.

Further, the Court s determination that money damages would suffice ignored Appellants proofs of both the Appellees trust dissipation and their financial instability. Courts have recognized that once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery. *See Frio Ice*, 918 F.2d at 159 (citing H.R.Rep. No. 98 543, at 7 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 411). Thus, the prevention of trust dissipation becomes essential to any meaningful remedy at all. *See id.* at 159 (stating that preventing dissipation of the trust is the key purpose of PACA ).

Although it is difficult to determine from the transcript of the District Court hearing, there may have been some confusion on the part of the Court as to the extent of trust dissipation. *See* Tr. at 8. The Court seemed to equate dissipation with effectively gone. However, counsel clearly stated that the purpose of the injunction would be to prevent *further* dissipation and, presuming the existence of remaining trust assets, we conclude that this is prop-

er use of injunctive relief in a situation such as this, even if the dissipation has commenced, but is still ongoing.

Additionally, the District Court s analysis did not reflect an appreciation of the PACA trust s non-monetary attributes, and misconstrued the significance of the trust itself. The Court viewed the situation as comparable to that of creditors in pursuit of a financial deadbeat in a breach of contract situation. *See* Tr. at 5. However, in doing so, the District Court disregarded the manner in which the PACA trust alters the terrain substantially. *Continental Fruit Co. v. Thomas J. Gatziolis & Co.,* 774 F.Supp. 449, 453 (N.D.Ill.1991) (stating that an argument that only monetary damages were at stake in an action to enjoin trust dissipation might be persuasive in the absence of the PACA statute). Congress specifically singled out the potential harm to unpaid sellers in the perishable agricultural commodities industry for special protection under PACA such that no unpaid supplier with perfected rights should be relegated to seek money damages only, especially when dealing with a financially unstable debtor who is dissipating trust assets.

**[9, 10]** In order to determine whether we should vacate the District Court order or reverse it outright, we must address whether the other necessary elements for the issuance of a preliminary injunction are present on the record before us. *See* Fed.R.Civ.P. 65. The usual requirements for injunctive relief should apply to injunctions sought in aid of PACA. *See JSG Trading,* 917 F.2d at 79. Four factors must be considered by a court in deciding whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary relief will result in even greater harm to the nonmoving party; and (4)

whether granting the preliminary relief will be in the public interest. *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 879 (3d Cir.1997) (quoting *American Civil Liberties Union v. Black Horse Pike Reg l Bd. of Educ.,* 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc)). A court should endeavor to balance these factors when determining if an injunction should issue. *See Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir.1999).

**[11]** We conclude that a preliminary injunction should issue here because the four factors required to grant a preliminary injunction are apparent on the record before us. *See, e.g., Council of Alternative Political Parties,* 121 F.3d 876 (reversing the district court s denial of preliminary injunctive relief and entering an order directing the district court to issue such relief because all four required factors favored granting the injunction); *accord Polaroid Corp. v. Disney,* 862 F.2d 987 (3d Cir.1988); *Motel 6, Inc. v. Pfile,* 718 F.2d 80 (3d Cir.1983); *SEC v. Bonastia,* 614 F.2d 908 (3d Cir.1980). Appellants have a high probability of success on the merits in a suit to enforce payment, for they have sufficiently demonstrated their entitlement to payment and their status as trust beneficiaries with perfected rights. We do not see how granting a preliminary injunction under these circumstances will result in greater harm to Appellees than Appellants, given that Appellees are already financially insolvent and, yet, owe Appellants close to $1.5 million dollars. Further, we find that issuance of a preliminary injunction here is in the public interest, as the statutory purpose explicitly encapsulates this.[7] *See* 7 U.S.C. § 499e(c)(1).

**[12, 13]** We also find that PACA trust dissipation in this case constitutes irreparable harm. Although the District court did not reach this prong specifically, we note that Appellants suffered irreparable

7. Specifically, PACA states that [t]his subsection [§ 499e(c)] is intended to remedy such burden on commerce in perishable agricultur-

al commodities and to protect the public interest. 7 U.S.C. § 499e(c)(1).

injury when the trust was depleted and payment was not readily forthcoming or available. *See, e.g., Goadby v. Philadelphia Elec. Co.,* 639 F.2d 117, 120 (3d Cir. 1981) (explaining, in a non-PACA case, that when determining whether to grant injunctive relief, irreparable harm exists when monetary damages are difficult to ascertain or are inadequate). We agree with the federal courts, including a number of district courts in this circuit, that have held that trust dissipation can satisfy this factor if, absent such relief, ultimate recovery is rendered unlikely. *See Continental Fruit Co.,* 774 F.Supp. at 453 (finding irreparable harm because, absent injunctive action, potential trust dissipation would contravene PACA and permanently injure the trust beneficiary when the trustee had limited assets); *Gullo Produce Co. v. A.C. Jordan Produce Co.,* 751 F.Supp. 64, 67 (W.D.Pa.1990) (concluding that plaintiffs have suffered and will continue to suffer immediate and irreparable harm if the defendant is not restrained from using or otherwise dissipating the trust assets when the defendant s insolvency precluded recovery); *DeBruyn Produce Co. v. Olympia Produce Co.,* 734 F.Supp. 483, 485 86 (N.D.Ga.1989) (granting injunctive relief in the form of a segregated trust because the plaintiff, in light of the defendant s troublesome financial situation, would suffer irreparable harm if unable to collect its receivables);[8] *cf. JSG Trading,* 917 F.2d 75, 80 (denying injunctive relief because plaintiff was unlikely to suffer irreparable harm absent a showing that defendant, despite trust dissipation, would be unable to satisfy its financial obligations to plaintiff).

## IV.  CONCLUSION

Accordingly, because we find that Appellants do not have an adequate remedy at law, and because we find that the four factors required to issue a preliminary injunction favor granting such relief, we will reverse the District Court order and direct the District Court to enter a preliminary injunction, forthwith, preventing Appellees from dissipating trust assets wherever located.



**UNITED STATES of America,
Plaintiff Appellee,**

**v.**

**Joseph CHRISTMAS, a/k/a Jason
Carter, Defendant
Appellant.**

**No. 99 4631.**

United States Court of Appeals,
Fourth Circuit.

Argued:  May 5, 2000

Decided:  Aug. 2, 2000

Defendant entered conditional guilty plea in the United States District Court

---

**8.**  We also note that many unpublished district court decisions in our Circuit have raised and resolved this issue consistent with our reasoning. *See, e.g., Botman Int l, B.V. v. International Imports, Inc.,* No. 99 5088, 1999 WL 997752, at *2 (E.D.Pa. Nov.4, 1999) (ordering a preliminary injunction to prevent irreparable harm to the plaintiff where the defendant corporation was financially unstable, could offer no credible explanation as to why it had less money than it owed, and was likely to further dissipate PACA trust assets); *ZAS Int l Agric., B.V. v. ZAS USA, Inc.,* No. 98 4073, 1998 WL 469958, at *3 (E.D.Pa. Aug.7, 1998) (denying plaintiff s request for an ex parte temporary restraining order because, due to the nature of such a request, the Court was unwilling to close down, effectively, the defendants businesses and endanger existing trust assets absent a specific showing that the assets were actually threatened with dissipation); *Six L s Packing Co. v. Arter,* No. 88 1998, 1991 WL 4400, at *5 (E.D.Pa. Jan.6, 1991) (discussing the prior history of the case in which the District Court had granted, and the Court of Appeals for the Third Circuit had affirmed, a preliminary injunction to prevent trust dissipation before the Defendant filed for bankruptcy and then the District Court reaffirmed the injunction after the Defendant filed because of the Defendant s obvious inability to satisfy its financial obligations to the seller).